**Maxine Montgomery MORGAN et al., Appellants,**

**v.**

**Donald G. STOVER, Appellee.**

**No. 4690.**

Court of Civil Appeals of Texas, Eastland.

May 17, 1974.

Rehearing Denied June 7, 1974.

Upton, Shannon, Porter & Johnson, Craig Porter, San Angelo, T. P. Robinson, Jr., Eldorado, for appellants.

J. R. Black Jr., Scarborough, Black, Tarpley & Scarborough, Abilene, W. B. Wright, Cisco, for appellee.

RALEIGH BROWN, Justice.

Maxine Montgomery Morgan, J. A. Montgomery, Jr., Arthur A. Montgomery, Lawrence Calvin Montgomery and Jack Elder, individually and as Independent Executor of the Estate of Elizabeth Montgomery Elder, deceased, brought suit in the form of trespass to try title against Donald G. Stover seeking to recover possession of lands located in Eastland and Callahan Counties and to quiet title to same. The plaintiffs are the heirs of J. A. Montgomery who died in March of 1969, and Annie Montgomery, who died in September of 1968.

Stover answered by a plea of not guilty and by cross-action sought a decree of specific performance that he might purchase the land under an option contained in a lease contract.

The Montgomery heirs pled defensively to the cross-action that a 1967 document was without consideration, was unilateral and without mutuality of obligation and could form no basis for an extension of the option to purchase the lands as provided in the original lease. Additionally, they pled the doctrine of equitable estoppel

prevents Stover from relying upon the 1967 document.

The record reflects that on March 20, 1963, J. A. and Annie Montgomery entered into a written lease of the lands with Donald G. Stover as lessee. The agreement provided in part for a term commencing January 1, 1964 and ending January 1, 1970, an annual rental of $400, a requirement that the premises would be used for farming and grazing purposes only, that Stover could not sub-let the premises without the consent of the Montgomerys in writing, and included an option to purchase the lands during the term of the lease at a price of $70 per acre to be paid cash. On March 6, 1967, J. A. and Annie Montgomery executed the following instrument, which was not signed by Stover:

"WHEREAS, on the 20th day of March A.D. 1963, J. A. Montgomery and wife, Annie Montgomery, did make, execute and deliver to D. G. Stover a certain surface lease recorded in Vol. 347, page 636, Deed Records of Callahan County, Texas, covering the following described land.

202.5 acres of land, belonging to J. A. Montgomery, Abst. No. 884, W. J. Bryson Surv. 1564, O. J. Burks Sur. and E. R. Milles Sur. 1870, and being more fully described in the Deed Records of Callahan County, Texas.

AND WHEREAS, J. A. Montgomery and wife, Annie Montgomery, are desirous of having the term of the aforesaid lease extended to read Jan. 1, 1972, and we hereby ratify and confirm the above lease, and all other conditions of said lease to remain the same."

Stover notified the Mongomery heirs in December of 1971, that he was exercising his option to purchase the land. The Montgomery heirs refused to execute instruments of conveyance. They contend such action came too late since the option to purchase was not a right provided by the document of 1967. A jury trial resulted.

At the conclusion of all the evidence, the trial court granted a motion for an instructed verdict favoring Stover. Judgment for specific performance requiring the Montgomery heirs to convey by general warranty deed the title to the lands to Stover was entered. The Montgomery heirs appeal.

The thrust of the appeal of the heirs is primarily two-fold: first, they maintain the document of 1967 was invalid and could not authorize the option to purchase and second, they argue the trial court erred in failing to submit issues comprising their defense of equitable estoppel to the cross-action.

■ We do not agree with the Montgomery heirs in their contention that the document was invalid and did not authorize an option to purchase. The record reflects that during the term of the original lease, J. A. and Annie Montgomery executed the 1967 document. It was delivered to Stover and by him filed of record. He made rental payments and improvements on the land subsequent to the delivery of the document.

■ There can be no dispute that parties to an existing agreement have the right to modify it. As stated by this court in Upshur County v. Heydrick, 221 S.W. ed 326 (Tex.Civ.App.—Eastland 1949, writ ref. n. r. e.):

"The power to make a contract carries with it the right to modify or change the contract so made."

See also 13 Tex.Jur.2d, § 267, at page 496.

■ Stover was not required to sign the 1967 document to give it validity. It was announced in Rubin v. Polunsky, 366 S.W. 2d 234 (Tex.Civ.App.—San Antonio 1963, writ ref. n. r. e.):

"The rule in Texas is, that a contract in writing signed by one party and expressly accepted orally by the other, *or the terms thereof performed and the benefits*

*thereof accepted,* is in law the written contract of the parties and binding on both. Martin v. Roberts, 57 Tex. 564; Chavez v. Goodman, Tex.Civ.App., 152 S.W.2d 826, no writ history; Burke v. Shafer, Tex.Civ.App., 189 S.W.2d 444, writ ref. w. o. m." (emphasis added)

Stover performed under the terms of the lease, accepted the benefits of the extended term, and became obligated to pay rents for an additional two years.

The issue becomes whether the modification was based on a sufficient consideration. It is said generally that the rules that govern the sufficiency of contracts also govern the sufficiency of the consideration for the modification of an existing contract. In the case at bar reciprocal obligations are imposed upon the parties by the 1967 amendment.

Our Supreme Court in Texas Gas Utilities Company v. Barrett, 460 S.W.2d 409, stated:

"In speaking of mutual reciprocal obligations as consideration, the rule was stated in Clement v. Producers' Refining Co., 277 S.W. 634 (Tex.Comm.App.1925) that 'where no other consideration is shown, mutual obligations by the parties to the agreement will furnish a sufficient consideration to constitute a binding contract.' See also Johnson v. Breckenridge-Stephens Title Co., 257 S. W. 223 (Tex.Comm.App.1924) and Roberts v. Anthony, 185 S.W. 423, (Tex. Civ.App.—Amarillo 1916, no writ.)"

Continuing in the same case, the court said further:

"It is presumed that when parties make an agreement they intend it to be effectual, not nugatory. Portland Gasoline Co. v. Superior Marketing Co., Inc., 150 Tex. 533, 243 S.W.2d 823 (1951). A contract will be construed in favor of mutuality, Carpenter Paper Co. v. Calcasieu Paper Co., Inc., 164 F.2d 653 (5th Cir. 1947). The modern decisional tendency is against lending the aid of courts to defeat contracts on technical grounds of want of mutuality. Armstrong v. Southern Production Co., Inc., 182 F.2d 238 (5th Cir. 1950)."

We hold the 1967 document to be a valid enforceable modification of the 1963 lease. Its effect is an extension of the term of the 1963 lease and all its provisions including the option to purchase.

■■ The trial court having instructed a verdict in favor of Stover, to be correct there must be no evidence having probative force upon which a jury could have made findings of equitable estoppel. Anderson v. Moore, 448 S.W.2d 105 (Tex.Sup.1969). To make this determination all evidence must be considered in the light most favorable to the Montgomery heirs and every reasonable inference deductible from the evidence is to be indulged in their favor. Seideneck v. Cal Bayreuther Associates, 451 S.W.2d 752 (Tex.Sup.1970); Triangle Motors of Dallas v. Richmond, 152 Tex. 354, 258 S.W.2d 60 (1953).

The heirs contend that an exchange of letters between J. A. and Annie Montgomery and Stover prior to the Montgomerys' execution of the document of 1967 was some evidence of probative force from which the elements of equitable estoppel could be found.

The letters indicate a course of negotiations between the Montgomerys and Stover, concerning an extension of the 1963 lease and also the possible sale of the land for other than cash.

On April 13, 1966, J. A. Montgomery wrote Stover as follows:

"After a conference with our children about the sale of the farm, we have decided that we will not sell it except for cash. And further, we do not care about selling it at this time, unless you exercise your option.

In the future if we ever decide to sell the place, the renter would have first choice to buy it."

By letter of January 27, 1967, the Montgomerys wrote Stover in part as follows:

"The contract will be on its way in a few days . . . You can have a 5 year lease on it and fix the land like you want it and have the option on buying it if we have to sell it. We hope we haven't caused you too much trouble."

Then on March 13, 1967, Donald Stover wrote the Montgomerys in part as follows:

"I guess I didn't make my self clear about the lease on the place. What I wanted was an extension on the lease that I now have. I am sending the lease like I wanted. It is a three year extension on the lease that I now have. If this is alright with you have a Notary come to your house if you would like, and I will pay for it. The reason I want this extension is because I want to do quiet a bit of improvements on the place. The reason that I did not sign the lease that I am sending is because the person that fixed it up for me said there wasn't any use because it is just an extension on the lease that I now have. Will need both of your signatures on the lease extension. I am sending a copy that you may keep.

The work that I will do will not cost you anything. I am going to do it myself.

I am sending the lease back that you sent."

Our Supreme Court discussing the elements of equitable estoppel in Gulbenkian et al. v. Penn, 151 Tex. 412, 252 S.W.2d 929 (1952) stated: ,

" 'In order to constitute an equitable estoppel or estoppel in pais there must exist a false representation or concealment of material facts; it must have been made with knowledge, actual or constructive, of the facts; the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; it must have been made with the intention that it should be acted on;

and the party to whom it was made must have relied on or acted on it to his prejudice.'  31 C.J.S., Estoppel, § 67 page 254."

See also Rio Delta Land Company v. E. W. Johnson, 475 S.W.2d 346 (Tex.Civ.App. —Corpus Christi 1972, writ ref. n. r. e.); Echols v. Bloom, 485 S.W.2d 798 (Tex. Civ.App.—Houston 1972, writ ref. n. r. e.).

■ By indulging every reasonable inference deducible from the evidence in favor of the Montgomery heirs, we hold there is no probative evidence of equitable estoppel. The 1967 document executed by the Montgomerys, after the negotiations with Stover, extended the term of the original lease "to read Jan. 1, 1972." It further provided "we hereby ratify and confirm the above lease to remain the same." The Stover letter of March 13, 1967, transmitting the 1967 document to the Montgomerys contains no false representations or concealment of material facts. The point of error is overruled.

We have considered all points of error and overrule each.

The judgement is affirmed.