**TURNER, COLLIE & BRADEN, INC., Appellant,**

v.

**BROOKHOLLOW, INC. et al., Appellees.**

No. 17818.

Court of Civil Appeals of Texas, Houston (1st Dist.).

June 4, 1981.

Rehearing Denied Aug. 6, 1981.

Fulbright & Jaworski, Frank G. Jones, Roger Townsend, Houston, for appellant.

Johnson, Swanson & Barbee, Merril L. Hartman, Charles W. Cunningham, Houston, for appellees.

Before WARREN, EVANS and DOYLE, JJ.

WARREN, Justice.

This is an appeal from a judgment granting appellees indemnity against appellant from an award of the jury in favor of the general contractor, Whitelak, Inc., and from an additional award of damages in favor of appellees against appellant. No appeal was taken from the judgment in favor of Whitelak, Inc.

Whitelak, Inc., as general contractor, agreed to construct an underground sewer system for appellees. Appellant was hired by appellees to act as the engineer on the project. The underground system was built at a depth which was beneath the water table in the area of construction. The line was completed, but before final inspection was made, numerous leaks and cracks in the line were discovered. The contractor undertook to repair these defects, but the repairs were interrupted by a dispute with an abutting landowner who alleged an encroachment and claimed that the line as built was causing damages to his property. Several months later this dispute was resolved and the contractor resumed its repair efforts. Thereafter, the contractor abandoned the repair efforts and demanded payment for the work and materials expended by it in its attempts to repair the line. Shortly thereafter, appellees abandoned the line and decided to construct another line shallower than the one already in place.

The general contractor sued appellees for the extra work it performed while attempting to repair the line. Appellees sued appellant for indemnity against the claims of the contractor and for other damages it allegedly incurred because of appellant's negligent engineering services. Appellant brought a counterclaim against appellees for unpaid engineering fees.

The main issue in the lawsuit concerned which party was liable for the leaks and cracks in the line. The contractor claimed that appellant was liable because it would not approve the use of special section 5, a procedure sometimes used in building underground lines when the soil is perenially wet. (Special Section 5 is a construction

method whereby the pipe is encased and reinforced by timber and then compacted with shale and other materials.)

In answer to special issues, the jury found, among other things, that: (1) the conduct of appellant was the sole cause of the failure of the trunk sewer to be in operating condition, (2) the value of the repair work and materials furnished by Whitelak, Inc., was $176,970.69, (3) the total sum of $236,245.13 would reasonably compensate appellees for the damages which they have suffered and will suffer in the future as a result of the failure of the trunk sewer to be in operating condition, and (4) appellant did not perform the engineering services covered by certain invoices.

In answering certain of the above issues, the jury impliedly found that Whitelak, Inc., substantially performed, or was prevented from substantially performing, the contract in accordance with the plans and specifications contained in the contract.

In twenty-four points of error, appellant claims that the judgment should be reversed because: (1) the contractor failed to complete construction, (2) there was no evidence to support the jury's findings that the conduct of appellant was the sole cause of the failure of the trunk line to be in operating condition, (3) the damages, interest and attorneys fees awarded against it were erroneous as a matter of law, (4) the evidence showed that it was entitled to recover against appellees for its engineering services furnished as a matter of law, and (5) the trial court erroneously excluded certain evidence and erroneously admitted certain evidence.

■ Before beginning a discussion of the points of error, we must point out that many of the points of error raised by the parties complain that "the trial court erred in entering judgment ...." In some instances the parties intended to raise "no evidence" points, but in others "insufficiency points" were attempted to be raised. A point of error which states that the trial court erred in rendering judgment on a verdict because of the state of the evidence, if it is adequate for any purpose, is only a

"no evidence" point. *Chemical Cleaning, Inc. v. Chemical Cleaning and Equipment Service, Inc.*, 462 S.W.2d 276 (Tex.1970). In reviewing those points of error in which appellant or cross-appellant urges error by the trial court in entering judgment, we will call the point a "no evidence" point and will consider only that evidence which tends to support the finding. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965).

■ First, appellant contends that the trial court erred in entering judgment because the contractor failed to complete construction.

There are two facts about which there is little or no dispute. The first is that the construction of the line was completed by the contractor and the second is that the line was never in operating condition for any appreciable length of time. It is appellant's contention that it was the obligation of the contractor to deliver the line in operating condition regardless of any deficiency in the plans and specifications, or of the conduct of the other parties to the suit. To support this proposition appellant relies on the case of *Lonergan v. San Antonio Loan and Trust Co.*, 101 Tex. 63, 104 S.W. 1061 (1907). That case held that a contractor is not excused from the full and complete performance of a building contract even if the specifications are defective. The theory underlying the holding is that the contractor is in as good a position as the owner to know whether the plans and specifications are sufficient for the intended purpose and, if he agrees to build the improvement according to the plans at a fixed price, he must do so. In that case the building fell before it was completed because of the negligent plans furnished by an architect who was not a party to the suit. The court held that as between the owner and contractor, the contractor should bear the loss. In a case similar to ours, this court held that a contractor was entitled to recover his additional expense incurred for repairs when the breaks in an underground sewer occurred because the owner's inspector negligently directed the contractor to use an insufficient amount of shell at points in the

line where the breaks occurred. *City of Houston v. L. J. Fuller, Inc.*, 311 S.W.2d 285 (Tex.Civ.App.—Houston [1st Dist.] 1958, no writ). The court in the *Fuller* case distinguished that case from *Lonergan, supra,* but we will not attempt to do so in our case, because it is extremely doubtful whether *Lonergan* is applicable to our case. In fact, our courts have recognized that a cause of action exists in favor of a contractor against an owner or architect who furnishes defective plans and specifications. *Board of Regents of the University of Texas v. S&G Construction Co.*, 529 S.W.2d 90 (Tex. Civ.App.—Austin 1975, writ ref'd n.r.e.) (where the court held that the failure to provide the builder with correct plans and specifications " . . . as were necessary to carry out the work was a breach of contract entitling the builder to recover its additional costs"), and *Newell v. Mosley*, 469 S.W.2d 481 (Tex.Civ.App.—Tyler 1971, writ ref'd n.r.e.) (where the court held that the plaintiff who engaged a contractor to build a house on a lot according to plans prepared by the plaintiff's architect impliedly warranted that the plans and specifications were sufficient for the purpose in view). Mr. Charles Whitehead, the contractor's president, testified that he requested permission from appellant to use special section 5, which was a more expensive method than the one being used to lay the pipe, but that permission was refused. Also, Mr. Wendell Beard, an engineer who was called to testify as an expert for both the contractor and appellees, testified that special section 5 should have been used and that the failure to do so was the cause of the breaks and cracks in the line. Some of appellant's witnesses gave similar testimony. This testimony is legally sufficient to support the finding of the jury that the conduct of appellant was the sole cause of the failure of the line to operate.

We will next consider appellant's six points of error pertaining to the trial court's improperly admitting and improperly excluding certain evidence during trial.

First, appellant claims that the trial court erred in excluding appellant's offer of testimony to impeach Wendell Beard by showing bias and motive for testifying against appellant.

On a bill of exception, appellant elicited from Wendell Beard, an expert witness for both the contractor and appellees, that he was a partner in an engineering firm which was a predecessor to the firm of Turner, Collie & Braden; that he had taken money from the surplus account with permission of one of the members of the predecessor firm; that the withdrawals were made for the purpose of paying for a residence he was building; that although Mr. Turner, a named member of the new firm of Turner, Collie & Braden, knew of and consented to the withdrawal, he used this as a reason for the termination of Mr. Beard as a partner in the predecessor firm, but it was other controversies between Mr. Turner and him which caused the termination; that he was terminated in 1955; that the only living survivor of the transaction was a man in Ft. Worth approaching 80 years of age; that the overdraws were paid back; that he had no resentment as a result of the situation and considers many ex-employees now at Turner, Collie & Braden as his friends.

■ Generally, a party has the right to cross-examine an adverse witness to show interest, bias or prejudice which could affect his credibility and a wide latitude is allowed in such matters because a jury is entitled to know any fact which would tend to influence the testimony given by a witness. *City of Longview v. Boucher*, 523 S.W.2d 274 (Tex.Civ.App.—Tyler 1975, writ ref'd n. r. e.).

■ The animus, motive or ill will of a prosecuting witness who testifies against a defendant is never a collateral or irrelevant inquiry. *Coleman v. State*, 545 S.W.2d 831 (Tex.Crim.App.1977).

■ There is no question but that the inquiry made of Mr. Beard regarding his ill feelings toward appellant was proper to show that it might influence his testimony or that the subject of the inquiry was relevant.

Appellees urge that the trial court properly exercised its wide discretion and excluded the testimony as being too remote. We agree, but only because of the time elapsed (25 years) between the incident (termination) from which the alleged bias could have arisen and the time of trial, and the additional fact that the parties against whom the bias most probably would have been harbored were no longer members of the firm. We cannot say that the trial judge abused his discretion in refusing to admit this testimony.

■■■ Appellant claims error by the trial court in excluding its offer of proof to impeach the contractor's claim that he requested and was denied permission to use special section 5 in constructing the trunk sewer.

Charles Whitehead, president of Whitelak, Inc., testified that he requested permission from Jack Farley, one of appellant's project representatives, to use special section 5 on the sewer line in question. He further testified that this request was relayed by Mr. Farley to Mr. Al Knipa, an employee of appellant, who refused the request. Although a deposition was taken from Mr. Farley, it was not offered, nor was he called as a witness at trial. The evidence sought to be used to impeach Mr. Whitehead consisted of a letter dated June 11, 1971, from the attorneys for Whitelak to appellant's attorneys, which contained a schedule for depositions, including Mr. Farley's, to be held on June 30th and July 1, 1976, and answers to interrogatories by Charles Whitehead to show that Jack Farley had been an engineering inspector on other jobs on which Whitelak had been the contractor, and that on June 15, 1977, Whitehead invested $10,000 in a firm started by Farley to provide inspection services for engineers who could not justify the expense of a full time inspection staff.

Appellant urges that this testimony is admissible to impeach Mr. Whitehead's testimony because, on or near the day Farley's deposition was scheduled, Whitehead loaned $10,000 to Farley, who was the only witness who could confirm or deny that Mr. White-

head had requested permission to use special section 5. Appellant urges that the evidence was admissible to show bribery or corruption. Any conduct on the part of a witness with reference to the case which indicates a willingness to interfere with the discovery of truth by fabricating false testimony or suppressing true testimony may be shown to affect his credibility. 1 Ray, *Texas Evidence* § 678 (3rd Ed. 1980). The exclusion of the letter of June 16 from appellant's counsel to counsel for appellees and Whitelak, Inc. confirming that depositions would be taken later in the month was harmless. Although the fact that Whitelak, Inc. had loaned money to one who might be a material witness was probably admissible, it would accomplish little in the way of impeachment because there was no showing in the trial court or here that the testimony of Jack Farley was unfavorable to appellant. The error, if any, was harmless.

■■ Appellant alleges that the trial court erred in excluding its offer of proof about a meeting on June 4, 1974, among representatives of appellant, appellees and Whitelak, Inc.,

The meeting was held at the office of appellant with various representatives present for the purpose of discussing the repair of the sewer line. Various proposals were made concerning the contractual and fiscal responsibility for the line repair which, if agreed to, possibly would have resolved the conflicts between the parties and delineated their respective responsibilities for the repair of the line. This testimony was properly excluded by the court as being part of settlement negotiations. It is within the trial court's discretion to determine from the surrounding circumstances whether an offer of compromise was made, and the appellate court is not authorized to overrule that discretion if the trial court's action is supported by sufficient evidence. *Allen v. Avery*, 537 S.W.2d 789 (Tex.Civ. App.—Texarkana 1976, no writ). The most tangible fact established by the excluded evidence was that Whitelak offered to repair the remaining leaks in the line and extend its guarantee for an additional $25,-

000. This offer was rejected and subsequently a suit was filed to recover Whitelak's additional expense. This point is overruled.

 Appellant next urges that the trial court erred in excluding its offer of testimony regarding the construction of a sewer line under substantially similar conditions and regarding the fact that this similar line was in operating condition.

Appellant attempted to elicit from Phil Gully, an employee of a Harris County developer, that his company had built a trunk sewer in wet sand using concrete pipe, without special section 5, in an area near the one in question and that there had been no problems with that line. The evidence was offered to show that special section 5 was not needed on a sewer line near the one in question which had been constructed under substantially similar conditions. The excluded testimony contained no comparison except that both lines were constructed in wet sand, that the depth of the line on the alleged comparable line was 18 to 20 feet and that the pipe used was concrete. Other testimony in the case shows that the line in our case was deeper by 4 to 8 feet, was made of reinforced concrete and was larger in diameter than the comparable line. The type of sand is critical, as is the width and depth of the trench and the diameter of the pipe, because they determine the stress and pressure the pipe will be required to withstand. Although the lines were superficially similar, there is enough dissimilarity of a technical significance to justify the trial court's exclusion of the evidence.

 Next, appellant claims that the trial court erred in admitting a report prepared by Lockwood, Andrews and Newnam, another engineering firm, into evidence without proper authentication.

Over objection that it was hearsay, the report was admitted into evidence for the limited purpose of establishing the reasonableness of the owner's decision to abandon rather than repair the lines. The jury was instructed by the trial court not to consider the report for any other purpose. The report was not authenticated by any person from Lockwood, Andrews and Newnam. It was hearsay and absent an exception to the rule it was inadmissible.

Appellees contend that the report was admissible because the reasonableness of its decision to abandon the line and its duty to mitigate the damages were in issue; therefore, under the law it was entitled to show the information upon which it acted to aid the jury in its determinations. In support of this contention, appellees rely on *McAfee v. Travis Gas Corp.*, 137 Tex. 314, 153 S.W.2d 442 (1941), wherein the Supreme Court relied on and followed *Jones on Evidence*, as follows:

> "Where the question is whether a party has acted prudently, wisely or in good faith, the information on which he acted, whether true or false, is original and material evidence, and not hearsay."

Appellees also cite *Allstate Insurance Co. v. Godwin*, 426 S.W.2d 652 (Tex.Civ.App.—Houston [1st Dist.] 1968, no writ) and *T.E.I.A. v. McDonald*, 238 S.W.2d 817 (Tex.Civ.App.—Austin 1951, writ ref'd) in support of their contention.

We have reviewed the cases cited by appellees in support of their contention and can find none where a written report was admitted for this purpose and certainly none as comprehensive as the Lockwood, Andrews and Newnam report. The forty page report discussed almost every aspect of the construction, proposed repairs, estimated costs and Lockwood's recommendation as to what should or should not be done to correct the deficiencies. One of appellant's contentions was that the pipe could be repaired by a method known as slip-lining. The report discouraged attempting this method of repair. Even though the court admitted the report for a limited purpose, it encompassed many facets of the case which were in issue and on which appellant was entitled to cross-examine. This point of error is sustained.

 Appellant's remaining point complaining of the trial court's evidentiary rulings alleges that the trial court erred in excluding its offer of evidence that appel-

lees had signed a contract limiting appellant's liability. The record reveals no letters signed by any of the appellees agreeing to limit appellant's liability on the work made the basis of this suit. The letters signed by a representative of Brookhollow which did agree to a limitation of appellant's liability related to work unconnected to the sewer line and were signed long after March, 1973. Other letters signed by the owners, agreeing to the limitation of appellant's liability, which were executed nearer to the March 23 letter, were admitted by the court to allow appellant to show a course of dealing between the parties. The later letters were remote and merely cumulative. This point is overruled.

■ Appellant's points of error 7, 8, 9, 10, 11 and 12 claim that there was no evidence to support the finding of the jury that the conduct of appellant proximately caused the failure of the trunk sewer to be in operating condition and the finding that neither the conduct of Whitelak, Inc., nor appellees was the proximate cause of its failure to operate. These points of error are overruled. Testimony was heard for sixteen days. A large portion of this testimony related to liability. Experts called by each party testified as to the cause of the failure of the line. Much of this evidence pertained to whether prudence dictated that special section 5 be used in the laying of this line and whose fault it was that this procedure was not used. Almost all of the favorable evidence supporting one party's position in the case was at least partially refuted by the testimony of witnesses offered by the opposing party or parties.

Appellant argues the fallacies of the contentions of appellees' expert witnesses and those of Whitelak, Inc., almost all of whom have technical knowledge and expertise not possessed by appellate judges. The jury was presented evidence which raised genuine issues of fact and the jury made its findings, relying on its best understanding of the issues. Charles Whitehead, president of Whitelak, Inc., testified that the line failed because of insufficient design by the engineer and that the engineer should have used special section 5. Wendell Beard, an engineer who testified as an expert for Whitelak, Inc., and for appellees, testified to the same effect. Whitehead testified that he requested permission from a representative of appellant to use special section 5, but was refused permission to do so. Even engineers employed by appellant testified that special section 5 should have been used. This evidence is legally sufficient to support the jury's answer to special issue no. one.

Appellant contends that the court erred in entering judgment on the cross-action of appellees for $298,472.67 plus pre-judgment interest because there was no evidence to support the award, the pleadings did not support the award and an incorrect measure of damages was applied.

In its action against appellant, appellees claimed that the two entered into a construction phase agreement whereby appellant was to perform engineering services on the trunk sewer and that appellant was negligent in its performance of the agreement by reason of certain defined acts of negligence, which were the cause of the failure of the sewer line to operate. These pleadings were sufficient.

In special issue no. 6, the jury was asked to find the amounts of money which would reasonably compensate the appellees for the damages, past and future, which they would suffer because of the failure of the trunk sewer to be in operating condition. The answers of the jury follow:

a) The reasonable and necessary expenses incurred in investigating the causes of the failure of the trunk sewer? $34,265.72

b) The reasonable and necessary expenses incurred in securing temporary sewage-removal services by the use of sewage pumping trucks? $ 7,892.10

c) The reasonable and necessary expenses incurred in designing and constructing a temporary lift station and force main? $85,060.45

d) The reasonable and necessary engineering expenses incurred in designing a permanent force main? $11,376.06

e) The present value of the reasonable and necessary expenses that probably will be incurred in the future in constructing a permanent force main? $80,000.00

f) The present value of the reasonable and necessary expenses that will be incurred in the future in paying for the additional energy costs, if any, attributable to the $17,650.80 *

operation of (a) the temporary force main and lift station that was built as a temporary replacement for the trunk sewer, and (b) the permanent force main & lift station that probably will be built as a permanent replacement for the trunk sewer?
*This figure is ten percent of the amount in question. That amount being $176,-508.00. [Notation made by the jury.]

■ Appellees' cause of action against appellant was for damages arising out of the negligent performance of an engineering services contract. The rule to be followed in awarding damages for a breach of contract is one that affords to the injured party compensation for the pecuniary losses suffered, and one that places him as nearly as possible in the position he would have occupied had the defaulting party performed the contract. 17 Tex.Jur.2d Damages § 53.

■ In Texas, the owner is entitled to recover for a breach of a construction contract the lesser of (1) the reasonable costs of remedying the defects, or (2) the difference in value of the structure contracted for and the value of the structure in its defective condition. *Hutson v. Chambless*, 157 Tex. 193, 300 S.W.2d 943 (1957). See *Restatement of Contracts*, § 346(1)(a)(II). This measure should be applied whether the party liable is a contractor, architect or engineer. See 25 A.L.R. 1045, which discusses the liability of an architect.

Appellant objected to the submission of special issue no. 6 as follows: "because of the failure on the part of the Defendant (appellees herein) to establish costs of repairs before or after, difference in market value of Brookhollow property was not a proper measure of damages being claimed ... and for the reason that this is an improper submission of Defendant's claims for damages since the proper measure of recovery is either the cost of repairs, if the trunk was not permanently injured, or if the trunk sewer was permanently injured, the difference in market value that Brookhollow property caused by the inability to repair the trunk sewer. Further that this issue is not predicated on findings that either the trunk sewer could not be repaired

and/or that the before and after market value of the Brookhollow property could not be determined."

■ There was no submission of an issue as to the value of the trunk sewer delivered free from defects and the one actually delivered, nor was an issue submitted inquiring as to the cost to repair the existing line. No instructions were given regarding the correct measure of damages to be applied by the jury if they found that the line could be repaired, or in the event that they found that it could not be repaired. The measure of damages is a question of law and should be given in the court's charge to the jury. *Mangham v. Hall*, 564 S.W.2d 465 (Tex.Civ.App.—Corpus Christi, 1978, writ ref'd n.r.e.).

■ Appellees urge that under Rule 279, Tex.R.Civ.Pro., the court made deemed findings which were supported by the evidence and which used a correct measure of damages; that is, the difference in the value of the trunk sewer for which they contracted and the value of the line as delivered in its defective condition. If this is so, the deemed findings granted recovery on a measure of damages on which an issue was not submitted to the jury and recovery was disallowed on the issues actually submitted. Damage issues which are neither requested nor submitted by the plaintiff are waived unless conclusively proved.

■ The record also shows that the issues as submitted allowed the jury to make findings, which if allowed to stand, would compensate appellees for a sewer line which is different from and more expensive in initial cost and operation than the one for which they originally contracted. We hold that it was error for the court to enter judgment for appellees in the amount of $298,472.67, because the findings of the jury do not support the award and the amount entered by the court was not conclusively proved. A trial court may not disregard the jury's findings as to damages and enter judgment in the amount which he considers to be appropriate under the evidence.

Appellant next claims that the trial court erred in granting the owners (appellees) indemnity for attorney's fees and prejudgment interest assessed against Whitelak.

According to the finding of the jury, appellees' liability to Whitelak arose solely because of the wrongful acts of appellant. Under these circumstances appellees are entitled to indemnity for the entire liability, including that for attorney's fees and interest. *Texas Construction Associates, Inc. v. Balli*, 558 S.W.2d 513 (Tex.Civ.App.—Corpus Christi 1977, no writ).

Appellant contends that as a matter of law it was entitled to recover on its claim against the owners for engineering services performed because the uncontradicted testimony of its vice president, Harold Lloyd, showed that it was entitled to payment. Appellant urges that under the rule in *Collora v. Navarro*, 574 S.W.2d 65 (Tex.1978), the general rule that such testimony of an interested witness only raises a fact issue is relaxed and, if such testimony is capable of being disproved by the opposing party and is not, the testimony establishes a point as a matter of law. In our case a major portion of the testimony in trial directly or indirectly touched on the competency of the engineering services rendered and much of the testimony would, if taken as true, contradict the testimony of Mr. Lloyd.

Appellant's remaining points of error urge that as a matter of law its liability was limited to an amount equal to the compensation it received for the work performed and that there was no evidence to support the answer of the jury to special issue no. 10.

There were many phases of engineering work to be done by appellant on the Brookhollow project, one of which was the trunk sewer line. Before a particular phase of work was to begin, appellant would send to the owners a work authorization letter containing a summary of the engineering services it proposed to perform and an estimate of appellant's expected fee. The letter requested that the owner sign and return the letter if it agreed with the terms and conditions set forth therein. Within these letters was a clause which limited the liability of appellant to the amount it would receive as compensation for its services performed. On March 23, 1973, such a letter, pertaining to the trunk sewer line, was sent to the owner but it was never signed and returned. Other such letters had been signed. Appellant contends that even though the letter was never signed, appellees are bound by its terms because the work was performed and payment was made in accordance with the terms thereof; therefore, they are bound by the remainder of the terms.

The rule in Texas is that a contract in writing signed by one party and expressly accepted orally by the other, on the terms thereof performed and the benefits thereof accepted, is in law the written contract of the parties, and binding on both. *Morgan v. Stover*, 511 S.W.2d 362 (Tex.Civ.App.—Eastland 1974, writ ref'd n. r. e.)

The issue before us is not so clear cut that we are able to resort to the rules set forth in the above case for its determination. There was testimony by two employees of the owners that appellant's project representative was contacted regarding the limitation of liability clause and was told that the owners could not agree to the clause. Other such letters wherein the owners did agree to limit the liability of appellant were admitted into evidence to show a course of dealing between the parties. This evidence created a fact issue as to whether Brookhollow accepted all of the terms of the agreement contained in the letter of March 23, 1973. Such an issue was submitted, and the jury failed to find that Brookhollow accepted all of the terms. There is no error.

Appellees, by cross-point, contend that the trial court erred in entering judgment that the owners take nothing from appellant for damages sustained as a result of appellant's location of the trunk sewer because the jury's answer to special issue no. 7 was against the great weight and

preponderance of the evidence. As mentioned previously, *Chemical Cleaning, Inc. v. Chemical Cleaning and Equipment Service, Inc., supra* renders this a "no evidence" point. However, it is not a true "no evidence" point. Appellees are complaining of the failure to find the existence of a vital fact in an issue on which the appellees had the burden of proof. Before appellees would be entitled to a reversal, the evidence must establish conclusively, or as a matter of law, that appellant was guilty of the negligence complained of in special issue no. 7. See R. Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex.L.Rev. 361 (1960). The issue asked whether appellant, Turner, Collie and Braden, failed to use ordinary care in designing the location of the trunk sewer. The jury answered "No." We cannot say that the evidence conclusively established, or established as a matter of law, that the engineer failed to use ordinary care in designing the location of the sewer. The cross-point is overruled.

That portion of the judgment which allowed appellees damages on their independent cause of action against appellant is reversed and remanded. The remaining portions of the judgment, including appellees' indemnity from appellant is affirmed.