

In The
Court of Appeals
Seventh District of Texas at Amarillo

No. 07-13-00320-CV

SHA, LLC AND SOUTHWEST LIFE INSURANCE
& HEALTH INSURANCE CO., APPELLANTS

V.

NORTHWEST TEXAS HEALTHCARE SYSTEM, INC., APPELLEE

On Appeal from the 47th District Court
Potter County, Texas
Trial Court No. 101609-A, Honorable Dan L. Schaap, Presiding

January 3, 2014

MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Before us is an interlocutory appeal from a temporary injunction entered against SHA, LLC and Southwest Life Insurance & Health Insurance Co. (collectively FirstCare).[1]  The injunction was entered in favor of Northwest Texas Healthcare System, Inc. (Northwest) which owns and operates Northwest Texas Hospital in Amarillo.  FirstCare argues that the trial court abused its discretion in entering the

---

[1] FirstCare is a third-party administrator which provides insurance claims administration for self-funded health benefit programs of employers.  SHA, LLC does business under the name of FirstCare.

injunction for several reasons.  That which we find dispositive and requires us to rule in favor of FirstCare relates to the scope of the edict.

*Standard of Review*

In reviewing the trial court's decision, our task is to decide whether it correctly opted to preserve the status quo pending a final hearing on the merits.  *Miller Paper Co. v. Roberts Paper Co.,* 901 S.W.2d 593, 597 (Tex. App.—Amarillo 1995, no writ); *accord Transport Co. v. Robertson Transports, Inc.,* 152 Tex. 551, 261 S.W.2d 549, 552 (1953) (holding that the sole question before the trial court is whether the status quo should be preserved).  The status quo contemplated is the last actual, peaceable, non-contested status which preceded the pending controversy.  *In re Texas Bd. of Pardons & Paroles*, 989 S.W.2d 360, 362 (Tex. 1998).

Next, a number of well-defined rules guide our undertaking.  First, only a clear abuse of discretion allows us to change the decision.  *Miller Paper Co. v. Roberts Paper Co.*, *supra*; *see Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002) (stating that the standard of review is one of abused discretion); *In re Marriage of Spiegel*, 6 S.W.3d 643, 645 (Tex. App.—Amarillo 1999, no pet.) (stating the same).  And, such an abuse occurs if the trial court acted arbitrarily, without reference to applicable guiding principles and rules, or misinterpreted or misapplied those guiding principles or rules. *Miller Paper Co. v. Roberts Paper Co.*, *supra*; *accord In re Marriage of Spiegel*, *supra* (stating that discretion is abused when the trial court acted in an arbitrary manner without reference to guiding rules and principles).

Second, there must exist a probable right to the relief sought at trial and a probable injury during the interim.  *Miller Paper Co. v. Roberts Paper Co., supra*; *accord*

2

*Butnaru v. Ford Motor Co.*, *supra* (stating that to be entitled to a temporary injunction, the complainant must prove the existence of a cause of action, a probable right to the relief sought, and probable, imminent, and irreparable injury in the interim). The former element is satisfied by the movant simply alleging a cause of action and presenting evidence tending to sustain it. *Transport Co. v. Robertson Transp. Inc., supra*; *Miller Paper Co. v. Roberts Paper Co.*, *supra*. It is not necessary that he prove he will ultimately prevail, however. *Miller Paper Co. v. Roberts Paper Co., supra*. The latter element is satisfied by the movant tendering evidence of imminent harm, irreparable injury, and inadequate legal remedy. *Id.* And, a legal remedy is inadequate if, among other things, damages are difficult to calculate or their award may come too late. *Id.*

Another guideline admonishes us to forego resolving factual disputes. *Id.* That the evidence is conflicted is no basis to conclude that the injunction was improperly issued. *Id.* Instead, we are obligated to interpret the potentially conflicting evidence in a light most favorable to the trial court's decision as well as draw all legitimate inferences from it in a like way. *Frequent Flyer Depot, Inc. v. Am. Airlines, Inc.*, 281 S.W.3d 215, 220 (Tex. App.—Fort Worth 2009, pet. denied); *Miller Paper Co. v. Roberts Paper Co.*, *supra*.

### Application of Standard of Review

Among other things, FirstCare argues that the trial court's injunction was too broad. We agree.

The record before us illustrates that Northwest agreed, in 2007, to provide medical services to clientele of FirstCare in return for scheduled reimbursement. The agreement provided for a two-year term. As the term's end approached, the litigants

agreed to extend the contractual relationship and did so via the execution of two documents on September 1, 2009. The first was labeled the First Amendment and the second was labeled the Second Amendment. In the former, there appeared a provision stating that "[t]his Agreement shall continue for a term of three (3) years and may not be terminated by either party except for cause." The Second Amendment contained a clause stating that "[b]oth Hospital and FirstCare agree that this Agreement shall not be terminated by either party without cause prior to August 31, 2012."

August 31, 2012 came and went without the execution of another written agreement or amendment, although negotiations to extend the relationship apparently had begun. Despite this, Northwest continued to provide medical services to FirstCare clientele, and FirstCare continued to reimburse Northwest. Yet, in June of 2013 FirstCare notified Northwest that it intended to end one aspect of the relationship. That aspect pertained to the reimbursement for medical attention given individuals except those within the Medicaid and CHIP program.[2] Northwest objected, contending that the agreement could only be terminated for cause and that no cause had arisen. This dispute led to the suit and temporary injunction now at issue.

Pivotal to our resolution of this appeal is the meaning and effect of the two clauses quoted above and found in the First and Second Amendments. And, what they mean is a question of law. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003). Thus, we need not defer to the trial court's construction of them but may construe them *de novo*. *El Paso Natural Gas Co. v. Minco Oil & Gas Co., Inc.,* 8 S.W.3d 309, 312 (Tex. 1999). In so construing them, we endeavor to enforce the

---

[2] The original agreement between the parties did not encompass the provision of medical services by Northwest to patients within the Medicaid or CHIP program. That category of individuals was added via another amendment executed in 2011.

4

parties' intent which is derived from the words used within the agreement and the circumstances surrounding its execution.  *Houston Exploration Co. v. Wellington Underwriting Agencies, Ltd.*, 352 S.W.3d 462, 469 (Tex. 2011) (stating that a "written contract must be construed to give effect to the parties' intent expressed in the text as understood in light of the facts and circumstances surrounding the contract's execution, subject to the parol evidence rule").   And, to those words we assign their plain meaning.   *Limestone Group, Inc. v. Sai Thong, L.L.C.,* 107 S.W.3d 793, 797 (Tex. App.—Amarillo 2003, no pet.)   With this in mind, we return to the clauses.

It must be remembered that they were executed on the eve of the original contract's expiration.  The parties sought to extend their business relationship.  In doing so, they executed amendments mentioning another three years either explicitly as in the First Amendment, or implicitly as in the Second Amendment.[3]  So too did both incorporate the possibility of reducing those three years to a lesser time.  But, it took "cause" to shorten the period.   These circumstances coupled with the plain meaning assigned to the words they used lead us to construe the two clauses as simply extending the original agreement for another three years, or a lesser period if cause arose.

Yet, Northwest would have us conclude that the interjection of the word "cause" was not simply related to ending the relationship before August 31, 2012.  Instead, it served to demarcate the only way the agreement could be terminated after August 31st.  That is, the accord would remain in force until cause arose entitling one party to cancel

---

[3] We say "implicitly" because the date mentioned, August 31, 2012, was 3 years from the date on which the amendment was executed.

it. Such a construction, though, finds no reasonable basis in either the written documents or the law.

Simply put, if the relationship could be ended only for cause after the passage of August 31, 2012, then it effectively would become perpetual. That is, as long as no cause justifying termination arose, the parties would be bound to perform forever. Yet, the law disfavors perpetual contracts, and an agreement will not be construed as creating such an arrangement unless its "unequivocal language" so mandates. *Delta Services & Equipment, Inc. v. Ryko Mfg. Co.,* 908 F.2d 7, 9-10 (5th Cir. 1990); *Freeport Sulphur Co. v. Aetna Life Ins. Co.,* 206 F.2d 5, 8 (5th Cir. 1953); *accord Fluorine on Call Ltd. v. Fluorogas Ltd.,* 380 F.3d 849, 855 (5th Cir. 2004) (noting that perpetual contracts are not favored). We find no such unequivocal language in the First or Second Amendments. Indeed, the fact that the original agreement was for a fixed two-year term and renewed for a specified three-year period belies the notion that the parties intended that the agreements would be binding in perpetuity, unless "cause" arose to permit their end.

To the extent that Northwest also contends that "[w]here . . . parties agree to renew a contract and no new terms are added, the new agreement incorporates the provisions of the unchanged original provisions," we find the proposition and authority in support of it inapplicable. Unlike the circumstances in *Safeway Managing General Agency for State & County Mut. Fire Ins. Co. v. Cooper,* 952 S.W.2d 861, 867 (Tex. App.—Amarillo 1997, no writ), *International Motorists Assn. v. Aguilar*, 402 S.W.2d 516, 519-20 (Tex. Civ. App.—Austin 1966, writ dism'd), and *Lowry v. Aetna Life Ins. Co.,* 120 S.W.2d 505, 507 (Tex. Civ. App.—Dallas 1938, writ dism'd), the record here contains no

evidence that the parties "renewed" the agreement. Instead, what we have is evidence of an attempt to renegotiate the execution of another (or eighth) amendment to the original accord shortly before August 31, 2012. And, while the proposed amendment contained a provision stating that "[a]ll other terms and conditions, as amended, shall stay in full force and effect," Northwest's representative testified that:

> We were -- we were in negotiations over that amendment. That's the eighth amendment, *but it was never signed.* But that's what -- the negotiations were about new commercial rates and *we had some language issues that we were negotiating as well, and didn't reach agreement on it*. But my understanding was, it was paid. We -- we had been paid on those new rates. [Emphasis added].

The same individual further acknowledged that 1) the August 31st termination date established by the First and Second Amendments was not changed via any of the amendments executed thereafter, 2) "[b]ut we did add another set of commercial rates in September of 2012," 3) Northwest "didn't amend the contract to extend the term of the agreement," 4) Northwest "didn't attempt to amend it to include some kind of evergreen provision like" it had in other FirstCare agreements, 5) Northwest was "operating on a year-to-year basis," 6) Northwest "didn't agree on that eighth amendment, but we were operating under those rates," and 7) there were negotiations to execute an Eighth Amendment but it "was never finalized." These admissions by Northwest's representative belie any suggestion that the original agreement with its multiple amendments was renewed immediately before or after August 31, 2012.

The same is true of Northwest's allusion to *Morgan v. Stower*, 511 S.W.2d 362 (Tex. Civ. App.—Eastland 1974, writ ref'd n.r.e.). It too is inapposite because, unlike the situation here, the agreement extending the original accord was signed by the party

7

against whom it was being enforced. *Id.* at 364-65. FirstCare signed nothing that barred it from terminating the contract, after August 31st, without cause.

Northwest also suggests that if the contract's term was not extended then we, nevertheless, should imply the existence of a reasonable term. We find this untenable for several reasons. First, we hesitate to imply an innocuous reasonable term when the parties themselves selected the date on which the contract became subject to termination without cause, that date being August 31, 2012. Second, Northwest's own representative testified that the company was "operating on a year-to-year basis" *viz* its contractual relationship with FirstCare. Northwest's own treatment of the term as one from "year-to-year" hardly supports the proposition that the term should now be treated as reasonable in duration. Third, reasonable terms may be implied in situations where no term is specified and the parties have expended "substantial sums of money or other investments . . . preparatory to or in accordance with . . . performance under the contract." *Clear Lake City Water Authority v. Clear Lake Utilities Co.*, 549 S.W.2d 385, 391 (Tex. 1977). We are cited to no evidence of record indicating that such expenditures occurred here after the three-year extension provided in the First and Second Amendments lapsed or in preparation for same.

What we have before us is the continuing operation of two parties to a written contract after its expressed term expired. The parties are free to so operate if they care to. Yet, the circumstance that developed by doing so likens to a contractual relationship with an indefinite time period. And, such contracts are terminable at the will of either party. *Id.* at 390-91 (stating that contracts which contemplate continuing performance or successive performances and which are indefinite in duration can be terminated at the

will of either party).  In other words, both FirstCare and Northwest were free to end, after August 31, 2012, their contractual relationship with each other at will.

Finally, it is true that FirstCare evinced its intent not to end the entire agreement but only a portion of it.  Whether that is permissible is a matter we need not address.  This is so because the trial court temporarily "enjoined and prohibited [FirstCare] from . . . terminating, cancelling, abrogating or reneging on any aspect of the Agreement, as amended, as it exists between the parties."  If it cannot end the agreement in "any aspect" then it surely cannot terminate the contract *in toto*.  And that edict evinces an abuse of discretion since both parties were entitled to terminate the indefinite relationship at will by the time Northwest filed suit.  In other words, the decision of the trial court does not comport with the law.

Accordingly, we sustain FirstCare's complaint about the injunction being overly broad and vacate the injunction.  The cause is remanded to the trial court.

Brian Quinn
Chief Justice