RHODES, INC., d/b/a Crossroads Furniture Warehouse & Showroom Company, Appellant,

v.

Sandra DUNCAN, et al., Appellees.

No. 17648.

Court of Appeals of Texas, Houston (1st Dist.).

Sept. 10, 1981.

Rehearing Denied Oct. 22, 1981.

Fulbright & Jaworski, Thomas M. Stanley, Houston, for appellant.

Lloyd M. Lunsford and James Thompson, Houston, for appellees.

Before WARREN, DOYLE and EVANS, JJ.

WARREN, Justice.

This is an appeal from a judgment awarding appellees damages allegedly caused by the acts of one of its vice principals.

In the early part of 1974, appellant operated a retail furniture store in the city of Houston. Leonard Gilmore was employed as its store manager and appellees were sales persons. Leonard Gilmore was also personally involved in real estate ventures. Some of the incidents of Gilmore's real estate business were performed on appellant's premises at a time when the store was open for business. Gilmore's supervisors knew of this and had no objection to his doing it. Appellee Duncan loaned Gilmore approximately $1400 and later invested $1500 in a limited partnership which was formed for the purpose of holding a tract of land in Waller County and reselling it for a profit. Appellee Bearden invested $3100 in the limited partnership. No resale was consummated and the land was sold at a public sale after the first annual installment was not paid. Appellees sued Gilmore claiming damages for fraud and breach of fiduciary relationship. Appellees joined appellant in the suit as defendant, alleging that it was fully aware of Gilmore's activities, that it failed and refused to prevent such actions and also ratified, confirmed and assisted him in such action.

The gravamen of appellees' action was that they were coerced by Gilmore, who was their supervisor at Crossroads, into advancing the money for the real estate transaction and that the money was invested only because they feared that they would lose their jobs if they refused. The jury found both Gilmore and appellant liable and assessed special as well as punitive damages against both. Gilmore did not appeal.

Among other things, the jury found that Gilmore made false representations as to material facts to appellees to induce them to enter into the real estate transactions and that appellant knowingly benefited from or knowingly participated in the false representations; that Gilmore coerced appellants into signing the real estate agreement and that appellant knowingly participated in the coercion; that Gilmore was acting within the scope of his authority for

appellant at the time of such conduct; and that appellant ratified these actions of Gilmore.

■ Appellant contends that the district court erred in entering judgment because there was no evidence or, alternatively, that there was insufficient evidence to support the above-listed findings. A point of error which states that the trial judge erred in rendering judgment on a verdict because of the state of the evidence, if it is adequate for any purpose, is only a "no evidence" point. *Chemical Cleaning, Inc. v. Chemical Cleaning and Equipment Service, Inc.*, 462 S.W.2d 276 (Tex.1970).

In our review of the above points of error we will consider only the evidence which tends to support the findings.

■ There is testimony to support the contention that the company allowed Gilmore to conduct business pertaining to his real estate ventures on the store premises and that Mr. Lowenstein, the president, hired Gilmore for a lesser amount because he would allow Gilmore to do this, but there is no evidence that appellant in any way participated in or received any benefits from the false representations made by Gilmore; there is no evidence to support a finding that appellant knowingly participated in any coercion of appellees and there is no evidence to support a finding that Gilmore was acting within the scope of his authority at the time of any false representations or coercions.

The main questions are whether a corporation may be held liable for the acts of a vice principal which are not referrable to the business of a corporation and whether it can be held liable for the ratification of such acts. We hold that in neither case can the corporation be held liable.

At all times material to the suit appellant operated a retail furniture store. There is no evidence that it was authorized to engage in the buying and selling of real estate for profit, nor that it had engaged in such activities. There is no evidence that the corporation or any vice principal, other than Gilmore, expected to receive any profits of or share any loss in the real estate transaction made the basis of this suit. There is no evidence that appellants believed or could have believed that the real estate transaction involved herein was anything other than a personal transaction among themselves, other investors who were not employed in the store and Gilmore. Likewise, there is no evidence that Gilmore's superiors ever learned of appellees' dissatisfaction with the transaction or of Gilmore's misdeeds until after the transaction and misdeeds had occurred.

Appellees do not contend that the participation of the corporation in the false representation and coercions or the benefits it received were of the conventional kind. Instead, they contend (1) that the corporation benefited indirectly because it paid Gilmore a lesser salary than it would have had to pay if it did not allow him to engage in the real estate business, (2) that since Gilmore was a vice principal and a corporation can act only through individuals, the acts of Gilmore were, in law, the acts of the corporation, and (3) that by not taking action to stop or to correct the wrongful acts after they came to the attention of Gilmore's superiors, the corporation ratified the acts and is liable for such action.

Appellees rely on *Ft. Worth Elevators Co. v. Russell*, 123 Tex. 128, 70 S.W.2d 397 (1934) for their contention that the acts of a vice principal constitute the act of the corporation.

In that case the corporation was held liable for exemplary damages in a suit by a widow against her husband's corporate employer because of his death resulting from the gross negligence of the company. The jury found that the employee's death was caused by the gross negligence of a winch operator who was known to be of a reckless and careless disposition in his work and that the superintendent, who was a vice principal, knew of the operator's disposition before the act and was grossly negligent in keeping the operator as an employee. The court said, at p. 400, "The power conferred upon Pettijohn (the superintendent) was of such a comprehensive and general character

**744**

as to plainly make him its alter ego or vice principal, and all of his acts *within the limits of his authority,* (emphasis ours) including, . . ., were the acts of the corporation." At p. 402, the court says ". . . he (the superintendent) was the alter ego or vice principal of the company, and *his acts in the performance of his duties* (emphasis ours) were the acts of the corporation, for which it is answerable in damages." Throughout the opinion the court limits the liability of the corporation to the vice principal's acts incident to his duties or authority rather than stating that the corporation was absolutely liable for any acts of the vice principal.

We hold that the liability of a corporation for the acts of its vice principal is not absolute but is limited to those acts which are referrable to the company's business to which the vice principal is expressly, impliedly or apparently authorized to transact. The fact that a corporation might indirectly or incidentally benefit from such unauthorized acts would not, standing alone, render a corporation liable.

Next we must consider whether a corporation may be held liable if it ratifies the wrongful acts of a vice principal even if such act or acts were not initially referrable to the corporation's business or authorized by the corporation. We hold that it may not. There can be no ratification of an act which is not done in behalf of, and does not purport to bind, the person against whom the doctrine of ratification is invoked. *Herider Farms—El Paso, Inc. v. Criswell,* 519 S.W.2d 473 (Tex.Civ.App.—El Paso 1975, writ ref'd n.r.e.) (citing 2 Tex.Jur.2d Agency § 86).

Appellants' first five points of error, complaining that there was no evidence to support the jury's answers to Special Issues one through five, are sustained. In the light of the above holdings it is unnecessary for us to consider the remaining issues since they pertain to special and exemplary damages.

Reversed and rendered.