**ENSERCH CORP. & Its Division, Lone Star Gas Company, Appellant,**

v.

**Eli REBICH, Appellee.**

**No. 12–93–00303–CV.**

Court of Appeals of Texas, Tyler.

March 21, 1996.

Rehearing Overruled April 30, 1996.

---

Randall Grasso, Mike Hatchell, Gregg Smith, El Paso for appellant.

Leonard Davis, Michael Starr, Tyler, for appellee.

### OPINION ON MOTION FOR REHEARING

RAMEY, Chief Justice.

We grant Enserch Corporation's Motion for Rehearing and substitute the following in place of the original opinion:

Enserch Corporation and its division, Lone Star Gas Company, ("Enserch") appeal from a summary judgment in favor of the Appellee, Eli Rebich ("Rebich"), in a suit based on a Gas Purchase Contract and the pricing provisions contained therein. We reverse the summary judgment for Rebich and remand the case to the trial court for further proceedings in accordance with this opinion.

The court below granted a summary judgment to Rebich based on its interpretation of the pricing terms in a fifteen year Gas Purchase Contract between Enserch and Rebich's predecessor gas producers. The disputed section of the contract pertained to the price Enserch, the buyer, would pay the Sellers/gas producers for natural gas it purchased under the terms of the contract. The producing wells were known as the S.O. Wylie No. 1 and No. 2. The contract called for payment for the gas at a price equal to the "maximum lawful price for Section 102 ...

gas" as determined by the federal government under the NATURAL GAS POLICY ACT of 1978 ("NGPA"). Enserch claims that this contractual language became meaningless after Congress deregulated natural gas prices, which justified subsequent payments to Rebich's predecessors and Rebich based on significantly lower, prevailing market prices. Rebich claims that deregulation did not result in an ambiguous or undetermined contract pricing term because the contract provided for the gas price to be tied to the section 102 gas price; Rebich thus asserts that Enserch was obligated to continue payments after deregulation according to that price. The section 102 gas price was calculated monthly by the Federal Energy Regulatory Commission using a formula that resulted in a progressively escalating price that significantly exceeded the market price for natural gas.

In late 1984, Enserch unilaterally informed Rebich's predecessors that effective January 1, 1985, the day deregulation commenced, their gas would no longer be subject to the price controls of Section 102 of the NGPA. Enserch further stated that it would begin paying a lower price for the gas upon deregulation and reminded the Sellers of their contractual right to request a redetermination of the price. On two subsequent occasions, Enserch lowered the price it paid for gas from the wells, informing the Sellers by letter in advance each time. Neither Rebich nor any of his predecessors ever requested a price redetermination. Rebich purchased the two Wylie wells in June of 1992 and filed suit for the alleged payment deficiency the following April; he seeks recovery for underpayment for gas for the four years preceding the date that his suit was filed. Enserch counterclaimed for overpayment.

The trial court granted summary judgment for Rebich, holding that the contract required payment in accordance with the "NGPA published Section 102 price" as a matter of law. The court awarded Rebich the price deficiency, with severance taxes and prejudgment interest, of $1,406,749.22 for natural gas produced from Rebich's wells during the preceding four year period. The court also ordered Enserch to pay the

"NGPA Section 102 published price ... for gas produced" after March 1993 until the end of the contract term in May 1995. Enserch filed motions for new trial and for a modification of the judgment on various grounds, including the fact that the government ceased publishing the Section 102 price in 1993. The trial court modified the judgment to cap payments for gas purchased after March of 1993 at the last Section 102 price published.

On appeal, Enserch raises five points of error, the second alleging that the trial court erred in granting summary judgment because of Rebich's failure to conclusively prove the existence after deregulation of a "maximum lawful price." Rebich had successfully argued to the trial court that the contractually mandated price for all gas purchased from Rebich's two wells was the "NGPA Section 102 price." Enserch countered that the contract's language specified the *"maximum lawful price* for Section 102 ... gas" (emphasis added), a phrase rendered ambiguous by the deregulation of the price of natural gas. Deregulation, however, did not end the publication of a Section 102 price although the price published after deregulation pertained to the type of Section 102 gas produced offshore.

 It is not the purpose of the summary judgment rule to afford a trial by affidavit or deposition, but rather to provide a method of summarily terminating a case when it appears that only a question of law is presented and that there is no genuine issue of material fact. TEX.R.CIV.P. 166a(c); *see Gaines v. Hamman,* 163 Tex. 618, 358 S.W.2d 557, 563 (1962). Thus, the presumptions and burden of proof for a conventional trial on the merits are immaterial to the burden that the movant for summary judgment must bear. *Mayhew v. Town of Sunnyvale,* 774 S.W.2d 284, 287 (Tex.App.—Dallas 1989, writ denied), *cert. denied,* 498 U.S. 1087, 111 S.Ct. 963, 112 L.Ed.2d 1049 (1991). Initially, the movant must prove both that there are no issues of material fact and that the movant is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–549 (Tex. 1985). Furthermore, in deciding whether there is a disputed material fact precluding summary judgment, evidence favorable to the non-movant must be taken as true and every reasonable inference should be indulged in favor of that non-movant. Likewise, doubts as to whether a genuine issue of material fact exists should be resolved against the movant. *Id.; Roskey v. Texas Health Facilities Commission,* 639 S.W.2d 302, 303 (Tex.1982). A matter is conclusively established if ordinary minds cannot differ as to the conclusion to be drawn from the evidence. *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.,* 644 S.W.2d 443, 446 (Tex.1982).

The following is a chronology of events in this dispute:

- 11/78 NGPA enacted; gas sales became regulated
- 4/80 Wylie No. 1 classified as sec. 102 well under NGPA
- 5/80 Gas Purchase Contract executed
- 4/82 Wylie No. 2 classified as sec. 102 well under NGPA
- 10/84 Enserch letter to producers reducing price to $3/MMBTU
- 1/85 Deregulation of gas prices on domestic wells
- 10/85 Second Enserch letter to producers reducing price to $2.20
- 5/86 Third Enserch letter to producers reducing price to $1.50
- 7/89 Wellhead Decontrol Act enacted; all gas deregulated
- 6/92 Rebich became owner of Wylie wells
- 1/93 NGPA repealed; no further publication of section 102 prices
- 4/93 Rebich filed suit against Enserch
- 5/95 Gas Purchase Contract terminated by its own terms

The pertinent provisions of this Gas Purchase Contract are:

ARTICLE XII *PRICE:* ...

In the event Seller (meets requirements for classification as section 102 or 103 gas and other miscellaneous specifications) Buyer will hereinafter pay Seller the maximum lawful price for section 102 or 103 gas ...

Notwithstanding the above Seller may request a redetermination of the price payable hereunder ... A redetermined price shall be in lieu of and supersede the price in effect under the preceding paragraph or any prior redetermined price ...

ARTICLE VI *PIPELINE CONNECTION:* ...

... If it is or should become unprofitable to Buyer for it to do so, Buyer shall neither be required to connect or continue connection with any well or wells now or hereafter completed on the premises covered hereby, nor to continue operation and maintenance of its pipeline to the field in which said premises are located ...

 In this contract, however, there is but one pricing scheme: to pay the "maximum lawful price for section 102 or 103 gas." Whether a contract is ambiguous is a question of law for the court to decide. *Coker v. Coker,* 650 S.W.2d 391, 394 (Tex.1983); *City of Pinehurst v. Spooner Addition Water Co.,* 432 S.W.2d 515, 518 (Tex.1968). In construing a contract, the principal objective is to ascertain the true intentions of the parties as expressed in their agreement. *Coker,* 650 S.W.2d at 393. A contract is not ambiguous if it is worded so that the court may give it a certain or definite legal interpretation, but the contract is ambiguous if there is genuine uncertainty about which of two meanings is appropriate. *Columbia Gas Transmission v. New Ulm Gas,* 886 S.W.2d 294, 296 (Tex. App.—Houston [1st Dist.] 1994, no writ); *Radx Corp. v. Demy,* 658 S.W.2d 298, 301 (Tex.App.—Houston [1st Dist.] 1983, no writ).

Here, the one pricing scheme in the contract ties the price to be paid to the monthly section 102 gas price. Despite Enserch's strong argument that "maximum lawful price" is the controlling phrase in this provision, the price paid for gas produced during the first four and one half years of the contract was exclusively determined from the published section 102 gas price.

 It is conceded that the said phrase "maximum lawful price" itself has no meaning or relevance after the end of gas price regulation. The remainder of the contract

terminology, "... for section 102 or 103 gas" remains. It continued to be calculated, published and available to the parties. The parties could have selected any index or reference for their price determinant. *See Edwards v. Lone Star Gas Co.,* 782 S.W.2d 840, 841 (Tex.1990). They selected section 102 gas prices. We are not free to excise that pricing provision. An additional rule of contract interpretation is that courts must accord some consequence to each aspect of the contract so that no provisions will be meaningless. *Coker,* 650 S.W.2d at 394; *City of Pinehurst v. Spooner Addition Water Co.,* 432 S.W.2d 515, 519 (Tex.1968); *Enserch Corp. v. Houston Oil & Minerals Corp.,* 743 S.W.2d 654, 657 (Tex.App.— Houston [1st Dist.] 1987, writ denied). The reference in the contract to the section 102 gas price was expressly adopted by the contracting parties as their pricing determinant. It provides a certain and definite meaning or interpretation. *Coker,* 650 S.W.2d at 393.

Enserch asserts that there are three possible interpretations of the pricing provision, apart from the interpretation claimed by Rebich: that the contract is silent as to a post-deregulation price, that a commercially reasonable price applies upon deregulation, or that the last regulated price should control. Enserch contends for the first interpretation but cites cases from other jurisdictions in which similar contract language was held to be ambiguous and in which the courts ultimately resolved the issue according to the second and third of these possible interpretations.

 In determining whether a provision of a contract is ambiguous, the court must look at the contract as a whole in light of the circumstances present when the contract was entered. *Coker,* 650 S.W.2d at 394. At the time the parties entered into the contract, the NGPA specifically provided that gas prices on domestic wells would be deregulated in 1985; thus, the federal statute that was the source of the pricing term expressly informed the parties that there would be no "maximum lawful price" after December 31, 1984. Considering these circumstances and the terms of the contract as a whole, we disagree that the parties intended the con-

tract to be wholly silent as to price for most of the contract period. Enserch's construction of the pricing provision suggests that the parties did not intend to agree to any pricing scheme for the final ten years of this fifteen year contract. We hold that it is not reasonable to interpret this comprehensive, thirty-nine page contract to be devoid of any expression of a basis as to the price to be paid for the gas, the central issue of the contract, for the final two-thirds of the contract period.

■ We hold that as a matter of law the pricing provision expressed in the contract has a certain and definite legal meaning or interpretation throughout the term of the contract and is not ambiguous. Enserch's second point of error is overruled.

In its third point of error, Enserch asserts that Rebich failed to allege or prove that the price it paid was not reasonable. Since we hold that the pricing provision of the contract is binding after deregulation, we also hold that Enserch's argument that a reasonable market price should be the pricing determinant fails. Therefore, we overrule Enserch's third point of error. *See Valero Transmission v. Mitchell Energy,* 743 S.W.2d 658, 663 (Tex.App.—Houston [1st Dist.] 1987, no writ).

In its fourth point of error, Enserch asserts that material issues of fact exist as to each of its affirmative defenses: waiver, estoppel, novation, amendment, modification and ratification. Effective initially in January 1985, Enserch wrote three successive letters notifying the Sellers from the Wylie wells, Rebich's predecessors, that it would pay subsequently lower prices for the gas, approximating the then-market price for the product. No Seller expressly consented to the lower prices but none objected and none declined to accept Enserch's checks; each Seller negotiated his monthly check from Enserch without a reservation of his rights to

challenge the gas prices, which were below the pricing scheme expressed in the contract. There are no allegations or evidence of the Sellers' economic duress in accepting the gas payments; under the record, the conduct of the Sellers was voluntary.[1]

■ A defendant resisting a plaintiff's motion for summary judgment by the assertion of an affirmative defense must present summary judgment evidence sufficient to raise an issue of fact on each element of that defense. *Brownlee v. Brownlee,* 665 S.W.2d 111, 112 (Tex.1984). The Gas Purchase Contract is silent as to a requirement that contract revisions be expressed in writing. The Statute of Frauds was not pled by Rebich nor did it allege in any fashion that an oral agreement would not be binding upon it. Enserch has correctly urged that Rebich's affirmative defense to Enserch's affirmative defenses must be specifically pleaded under Rule 94, Tex.R.Civ.P. *Simmons v. Compania Financiera Libano, S.A., et al,* 830 S.W.2d 789, 792 (Tex.App.—Houston [1st Dist.] 1992, writ denied; *LoBue v. United Services Planning Association, Inc.,* 467 S.W.2d 574, 576 (Tex.App.—Fort Worth 1971, writ dism'd); *Royal Typewriter Co. v. Vestal,* 572 S.W.2d 377, 378 (Tex.App.—Houston [14th Dist.] 1978, no writ); *Sustala v. North Side Ready–Mix Concrete Co.,* 317 S.W.2d 64, 67–68 (Tex.Civ.App.—Houston 1958, no writ). In the absence of a specific pleading of the Statute of Frauds or, alternatively, general allegations that no oral agreements would be binding upon him, Rebich cannot invoke the Statute of Fraud's protection with respect to Enserch's pertinent affirmative defenses. We proceed to consideration of the specific affirmative defenses.

*Waiver*

Enserch's position is that the Sellers, by acquiescing in and accepting without objec-

---

1. We are cognizant that a possible explanation for the reticence of Rebich's predecessors in insisting upon the pricing terms of their original contract was their concern that should the contract price be insisted upon, Enserch could, or would, unilaterally undertake to rescind the original contract and cease gathering gas from the subject wells. It might further have been developed that the Sellers were not confident that they could in 1985 and the years following negotiate a price for their gas from another purchaser that would be comparable to the alleged market price proposed by Enserch. In this record there is no pleading, proof or argument to support this rationale for the conduct of the respective parties; as stated, we conclude that Rebich's predecessors' acceptance of the monthly gas purchase checks was uncoerced.

tion Enserch's proposed lower prices for the gas, waived their right to require Enserch to pay in accordance with the pricing scheme specified in the Gas Purchase Contract. Initially, we consider Rebich's contention that a non-waiver provision in the original contract precludes validity of this affirmative defense. This provision reads:

> *WAIVER OF BREACH:* The waiver of either party of any breach of any of the provisions of this agreement shall not constitute a continuing waiver of other breaches of the same or other provisions of this agreement.

Rebich cites *Giller Industries, Inc. v. Hartley,* 644 S.W.2d 183, 184 (Tex.App.—Dallas 1982, no writ) where the Dallas court was presented with a similar non-waiver clause; the court concluded that although there was no Texas authority, the paragraph extinguished waiver as an affirmative defense.

▪ Three subsequent cases have, however, reached a contrary result. The Texarkana court twice has held that a non-waiver clause, as other contractual provisions, itself can be waived. *Winslow v. Dillard Department Stores,* 849 S.W.2d 862, 864 (Tex. App.—Texarkana 1993, writ denied); *Zwick v. Lodewijk,* 847 S.W.2d 316, 318 (Tex.App.—Texarkana 1993, writ denied). In both cases the court relied upon (1) Corbin's view that contractual non-waiver clauses are ineffective and furthermore may be waived [2]; (2) a post-*Giller* Dallas court opinion, *Regent International Hotels, Ltd. v. Las Colinas Hotels Corp.,* 704 S.W.2d 101, 104 (Tex.App.—Dallas 1985, no writ); and (3) numerous cases from other jurisdictions. *Zwick,* 847 S.W.2d at 318, n. 3. Although there are variations in the non-waiver clauses in the cited cases, we conclude that the three opinions subsequent to *Giller* are persuasive that, though the subject paragraph is some evidence of non-waiver, that provision may likewise be waived by the party's conduct.

▪ Waiver is defined as an intentional relinquishment of a known right or intentional conduct inconsistent with claiming it. *Massachusetts Bonding & Insurance Co. v. Orkin Exterminating Co.,* 416 S.W.2d 396

(Tex.1967); *Horton v. Robinson,* 776 S.W.2d 260, 264 (Tex.App.—El Paso 1989, no writ). There is a strong inference here from the evidence of the existence of the first two elements of waiver: (1) an existing right (the gas price specified in the original contract) and (2) actual or constructive knowledge of the existence of the right (the price to be paid for the gas was the central element of the contract; Enserch's letters preceding each reduction expressly stated that the proposed price was a reduction from the original contract price; and furthermore, the Sellers accepted the monthly payments for a period of eight years.)

▪ The key element, however, in establishing waiver is the third element, the intent of the alleged waiving party. *Bass & Co. v. Dalsan Properties—Abilene,* 885 S.W.2d 572, 577 (Tex.App.—Dallas 1991, no writ); *Vessels v. Anschutz Corp.,* 823 S.W.2d 762, 765 (Tex.App.—Texarkana 1992, writ denied); *FDIC v. Attayi,* 745 S.W.2d 939, 946 (Tex.App.—Houston [1st Dist.] 1988, no writ). There being no specific renunciation of the contract pricing provision by the Sellers, implied waiver from Seller's conduct becomes the basis for this affirmative defense. This Court and others have held that *"waiver by implication* should not be inferred contrary to the intention of the party whose rights would be injuriously affected thereby, *unless the opposite party has been misled to his or her prejudice".* (emphasis added) *Cecil Pond Const. Co. v. Ed Bell Investments, Inc.,* 864 S.W.2d 211, 215 (Tex.App.—Tyler 1993, no writ); *Vessels,* 823 S.W.2d at 765; *FDIC,* 745 S.W.2d at 947; *Cox v. Bancoklahoma Agri–Serv. Corp.,* 641 S.W.2d 400, 404 (Tex.App.—Amarillo 1982, no writ). The record is devoid of evidence that Enserch was prejudiced by the Sellers' acquiescence and acceptance of the lower prices for the gas. Therefore, the affirmative defense of waiver by implication is not available to Enserch here.

## Estoppel

▪ A material fact issue of the affirmative defense of estoppel has not been raised here. No summary judgment evi-

---

2. 3A Arthur L. Corbin, Corbin on Contracts, § 763 (1960).

dence of a false representation or any deceptive conduct by the Sellers in accepting the lower gas prices is presented in the record. The basis of estoppel is deception. *Benskin v. Barksdale*, 246 S.W. 360, 365 (Tex.Com. App.—1923, judg. adopted, holding approved). Additionally, there is no evidence of the required detrimental reliance by Enserch upon the Sellers' conduct. *Gulbenkian v. Penn*, 151 Tex. 412, 252 S.W.2d 929 (1952).

## Novation

■ One requisite element of novation is not demonstrated here. There is no discharge of the original Gas Purchase Contract and substitution for it by a new contract is not supported by the record. The original contractual provisions continued to control the relationship and obligations of the parties, except for the price to be paid for the gas. Neither party contends that the original contract was rescinded. Revising the compensation rate only is not sufficient to constitute a novation of the original contract. *Employers Mut. Liability Ins. Co. of Wis. v. Evins*, 211 S.W.2d 359, 362 (Tex.Civ.App.—Waco 1948, no writ).

## Amendment

■ Amendment is not an independent affirmative defense. It is embraced by the concept of contract modification. They are synonymous in this context. Amendment will be considered along with the contention that the original contract was modified.

## Modification

■ Modification of a contract is some change in an original agreement which introduces a new or different element into the details of the contract but leaves its general purpose and effect undisturbed. *Morgan v. Stover*, 511 S.W.2d 362, 364 (Tex.Civ.App.—Eastland 1974, writ ref'd n.r.e.). Even if there is no evidence of other valuable consideration for the modification, the continuing mutual obligations by the parties will furnish sufficient consideration to support a binding modified contract. *Texas Gas Utilities Co. v. Barrett*, 460 S.W.2d 409, 412 (Tex.1970);

*Morgan*, 511 S.W.2d at 365. Furthermore, it has been held that no showing of consideration for the contract modification is required as long as it is made in good faith. *Allied Chemical Corp. v. DeHaven*, 752 S.W.2d 155, 159 (Tex.App.—Houston [14th Dist.] 1988, writ denied); TEX.BUS. & COM.CODE ANN. § 2.209(a) and comment 2 (Tex.UCC) (Vernon 1994). There is no summary judgment evidence that the modification here was not made in good faith.

■ Enserch argues that the three letters dated October 1984, October 1985 and April 1986, advising the Sellers that Enserch intended to pay successively lower prices for their gas, were proposals to modify the original gas contract. At no time did the Sellers expressly accept the modified prices. Enserch asserts that there was an implied agreement to the modification. There is no dispute concerning Rebich's predecessors' aforementioned conduct in dealing with the monthly gas checks after January 1985. Rebich has not alleged that the Sellers were ignorant of any material facts. Enserch contends that its course of performance in paying the proposed lower prices was accepted and acquiesced in without objection by the Sellers and by their negotiating without reservation their monthly gas checks for more than eight years. This conduct by Rebich's predecessors is relevant to show modification of a contract. TEX.BUS. & COM.CODE ANN. § 2.208(a) and (c). A party that accepts a changed price is deemed to have made its own decision that it is just; if it thinks otherwise, it should resist. *Southwest Industrial Import & Export, Inc. v. Borneo Sumatra Trading Co.*, 666 S.W.2d 625, 628 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). Since, as stated, gas pricing was the central aspect of the parties' relationship, the significant reductions in payments to the Sellers over many years [3], together with the Buyer's three letters advising that the prices to be paid were below the contract price, allow the inference that the movant and his predecessors were aware that the Buyer was not paying the gas price specified in the contract. Thus, under this record and in light of the heightened stan-

---

3. Almost $150,000 per year on average.

dard of review of summary judgment appeals[4], we are required to conclude that the acquiescence and acceptance without objection of the reduced prices for years beyond the four-year limitation period to challenge Enserch's lower-than-contract prices does raise a material fact issue as to whether the price modifications were impliedly accepted by Rebich's predecessors. Enserch's assertion of its contract modification affirmative defense is sustained.

### Ratification

 Ratification is the adoption or confirmation, by one with knowledge of all material facts, of a prior act which did not then legally bind that person and which that person had the right to repudiate. *Vessels*, 823 S.W.2d at 764. Thus, the elements of ratification are not unlike those considered in our discussion of the defense of modification. There is authority, however, that ratification is reserved for the adoption of acts done only *on behalf of the alleged ratifier*, not to ratify the conduct of some other party to the transaction or someone other than the ratifier's representative. *Horton v. Robinson*, 776 S.W.2d 260, 267 (Tex.App.—El Paso 1989, no writ); *Buffalo Sav. & Loan v. Trumix Concrete*, 641 S.W.2d 650, 653 (Tex. App.—Corpus Christi 1982, no writ); *Rhodes v. Duncan*, 623 S.W.2d 741, 744 (Tex.App.—Houston [1st Dist.] 1981, no writ); *Herider Farms–El Paso, Inc. v. Criswell*, 519 S.W.2d 473, 477 (Tex.App.—El Paso 1975, writ ref'd n.r.e.). Thus, the doctrine of ratification appears not to embrace the adoption by the Sellers of the Buyer's acts in proposing the lower-than-contract gas prices. Furthermore, Rebich's predecessors' acceptances of monthly payments from Enserch were not performed for Rebich or on his behalf; therefore, we conclude that Enserch's defense of ratification by Rebich is not raised by this record.

Under the heightened standard of review for summary judgment, a genuine issue of material fact was raised by the proof that the original contract between the parties was modified by the acquiescence and acceptance of Enserch's reduced prices for the natural gas, precluding summary judgment for Rebich. Enserch's fourth point of error is sustained. Likewise, Enserch's general attack on the trial court's granting of the summary judgment in its first point is sustained. Enserch' fifth point of error was neither briefed nor argued by the parties and is overruled.

The summary judgment in favor of Rebich is reversed, and the cause is remanded to the trial court for further proceedings consistent with this opinion.

---

4. *Nixon,* 690 S.W.2d at 548–549.