**Nancy A. GUZMAN, Appellant/Cross–Appellee,**

v.

**UGLY DUCKLING CAR SALES OF TEXAS, L.L.P.; Ugly Duckling Credit Corporation, Appellees/Cross–Appellants.**

No. 04–01–00098–CV.

Court of Appeals of Texas, San Antonio.

Nov. 7, 2001.

David W. Rogers, Trent C. Rowell, Law Office of Dave Rogers, Inc., San Antonio, for appellants.

Inez McBride, Sean B. McNelis, Matthews & Branscomb, P.C., San Antonio, for appellee.

Sitting: PHIL HARDBERGER, Chief Justice, PAUL W. GREEN, Justice and SARAH B. DUNCAN, Justice.

Opinion by PHIL HARDBERGER, Chief Justice.

This case is yet another example that the courthouse can be a palace of disappointment—in this case for both parties.

The jury found for and against both parties and awarded no damages, leaving in the debris the legal question of whether attorneys' fees can be awarded to the Appellant's attorneys. The facts are a familiar story in our society.

### FACTS AND PROCEDURAL HISTORY

In April 1997, Nancy A. Guzman ("Guzman") purchased a 1993 Ford Tempo ("the vehicle") from a used car dealer, Ugly Duckling Car Sales of Texas, L.L.P. ("Ugly Duckling"). The parties signed a Retail Installment Contract and Security Agreement ("the contract"). The contract required Guzman to make forty-eight monthly payments of $234.89 for a total of $11,274.72. Payments were due on the 17th of each month. In the event of Guzman's default on her payments, the contract provided Ugly Duckling several remedies, including immediate repossession of the vehicle. The contract also included the following non-waiver provision in favor of Ugly Duckling: "By deciding not to use any remedy, we do not give up our right to consider the event a default if it happens again."

From April of 1997 to July of 1998, Guzman failed on several occasions to timely make her payments. On other occasions, the payments were for less than the required amount. During this time period, Ugly Duckling contacted or attempted to contact Guzman a number of times to discuss the delinquent status of

her account. Ugly Duckling, however, did not choose to pursue any of its remedies under the contract. In August of 1998, with Guzman $250 past due on her payments, Ugly Duckling repossessed the vehicle. Ugly Duckling then sold the vehicle at an auction for $1,834.

Guzman was unhappy with this conduct, and filed suit against Ugly Duckling for violations of the DTPA, breach of contract, and other causes of action. She claimed that Ugly Duckling made false and misleading statements regarding the acceptance of her late payments and the possibility of her vehicle being repossessed. Guzman also said that Ugly Duckling breached the contract by repossessing the vehicle. Ugly Duckling counterclaimed against Guzman for breach of contract. In response to the counterclaim, Guzman asserted waiver as an affirmative defense. She said that Ugly Duckling had waived any claim for breach of contract by continually accepting her late payments and not pursuing any remedy for default.

After each party had rested its case, the trial court granted a directed verdict in favor of Ugly Duckling on Guzman's breach of contract claim. At the same time, the trial court denied Ugly Duckling's request to grant a directed verdict on Guzman's DTPA claim. Before the case was submitted to the jury, the parties agreed to the following stipulation in open court: "The parties have agreed by and through their attorneys that the winning side should receive an additional award of $28,000 in attorneys' fees for the prosecution of this case."

The charge of the court required the jury to answer a series of questions regarding Guzman's DTPA claim, Ugly Duckling's breach of contract claim, Guzman's affirmative defense of waiver, and damages. The jury found that Ugly Duckling committed a DTPA violation, but awarded Guzman no damages. The jury also found that Guzman had breached the contract with Ugly Duckling. However, the jury awarded Ugly Duckling no damages for the breach and also found that Ugly Duckling had waived Guzman's failure to comply with the contract. After the verdict was read, Guzman requested the trial court to award her the $28,000 in attorneys' fees as the "winning side" pursuant to the parties stipulation. The trial court rendered final judgment on the jury verdict, concluding that neither party was entitled to recover attorneys' fees.

Guzman appeals the trial court's judgment. In three points of error, Guzman argues: (1) the trial court erred in not awarding her attorneys' fees; (2) the jury's verdict awarding her no damages on her Deceptive Trade Practices Act ("DTPA") claim was against the great weight and preponderance of the evidence; and (3) the trial court erred in granting a directed verdict against her on her breach of contract claim.

On cross-appeal, Ugly Duckling Car Sales of Texas. L.L.P. and Ugly Duckling Credit Corporation ("Ugly Duckling") raise two points of error, contending: (1) the trial court erred in not granting a directed verdict in its favor on Guzman's DTPA claim; and (2) the evidence is legally insufficient to support the jury's finding that Ugly Duckling waived any breach of contract by Guzman.

### ATTORNEYS' FEES

In her first issue on appeal, Guzman argues that the trial court erred in not awarding her attorneys' fees because of the parties stipulation made before the case was submitted to the jury. She contends that regardless of DTPA law, the parties' stipulation concerning attorneys' fees controls. She believes the stipulation focused on the case as a whole, not just

her DTPA claim. She argues that considering the jury's answers to all the questions in the charge, she was the "winning side" entitled to attorneys' fees under the stipulation. Alternatively, she argues that if the stipulation does not control, she is entitled to attorneys' fees under Texas Rule of Civil Procedure 131.

After the parties agreed to the stipulation in open court, but before jury deliberations, the trial court inquired as to which party would receive attorneys' fees if the jury answered for Guzman on her DTPA claim and answered for Ugly Duckling on its breach of contract claim. The parties agreed that if such a result occurred, it would be "left up to the Court in terms of who gets what, if anything." The jury found that Ugly Duckling committed a DTPA violation; Guzman breached the contract; Ugly Duckling waived such breach; and that neither party was entitled to recover damages.

■ Analyzing the issue purely under the terms of the stipulation, there was not a "winning side" in the case. The jury answered in each parties favor on their respective claims, but awarded neither party any damages. This is the result contemplated by the trial court before the case was submitted to the jury. As such, the parties agreed that the trial court had discretion in deciding whether to award attorneys' fees. Based upon that discretion stipulated to by the parties, the trial court chose not to award either party attorneys' fees. We find no fault with this decision. Second, Guzman is not entitled to attorneys' fees under the DTPA. The jury found that Guzman did not suffer any damages as a result of Ugly Duckling's DTPA violation. Therefore, Guzman was not a prevailing party under the DTPA and cannot recover attorneys' fees without having been awarded actual damages. *See Milam Dev. Corp. v. 7*7*0*1 Wurzbach*

*Tower Council of Co–Owners, Inc.,* 789 S.W.2d 942, 947 (Tex.App.—San Antonio 1990, writ denied). Third, Guzman is not entitled to attorneys' fees under Rule 131. Under its plain language, Rule 131 controls, "except where otherwise provided." Tex.R. Civ. P. 131. The only theory of recovery submitted to the jury on Guzman's behalf was her DTPA claim. Therefore, the DTPA controls the issue of Guzman's entitlement to attorneys' fees, not Rule 131. The trial court did not err in refusing to award Guzman attorneys' fees.

## FACTUAL SUFFICIENCY / DTPA DAMAGES

In her second issue, Guzman argues that the jury's finding that she suffered no damages after it had found that Ugly Duckling knowingly committed a DTPA violation was against the great weight and preponderance of the evidence. She claims that the record contains "un-controverted" evidence that she made seventeen payments of $234.89 to Ugly Duckling that were neither returned nor rejected; she replaced certain parts on the vehicle totaling $99.14; and she incurred rental expenses in the amount of $355. Guzman further contends that evidence exists in the record entitling her to mental anguish damages.

■ "When a party attacks the factual sufficiency of an adverse finding on an issue on which she has the burden of proof, she must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence." *Dow Chemical Co. v. Francis,* 46 S.W.3d 237, 242 (Tex.2001). "The court of appeals must consider and weigh all of the evidence, and can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust." *Id.*

■ In determining the amount of damages that would fairly and reasonably compensate Guzman for Ugly Duckling's DTPA violation, the jury was asked to consider the following elements: (1) the reasonable and necessary expense incurred in renting a car; (2) the amount of equity in the subject vehicle; (3) Guzman's mental anguish sustained in the past; and (4) Guzman's mental anguish that, in reasonable probability, she will sustain in the future. The jury answered "none" to each element.

Guzman testified that after the vehicle was repossessed, she rented a car "a couple of times ... to do stuff on the weekend." She introduced into evidence several receipts from Enterprise Rent–A–Car. The rental receipts in the record show that Guzman rented a vehicle on four or five occasions in February and March of 1999. Ugly Duckling repossessed the vehicle in August of 1998.

At the time Ugly Duckling repossessed the vehicle, Guzman still owed $5,806 on the vehicle under the contract. Ugly Duckling admitted evidence that at the time of repossession, the vehicle had an estimated cash value of $2,281.85. Ugly Duckling eventually sold the vehicle at auction for $1,834. Guzman failed to present any evidence contradicting these numbers, nor did she present evidence showing that she had equity in the vehicle.

Third, regarding damages for past and future mental anguish, Guzman testified that she was "depressed and sidetracked" as a result of losing her vehicle. Guzman also admitted into evidence evaluation reports from her employer stating that her performance at work had declined as a result of her car being repossessed. However, the record contains no evidence that Guzman lost her job because of this. Also, Guzman admitted on cross-examination that she never sought any treatment or counseling for her depression.

Viewing the evidence as a whole, the jury's finding on Guzman's DTPA damages is not against the great weight and preponderance of the evidence. *See Francis,* 46 S.W.3d at 242. The record contains sufficient evidence for the jury to have found that Guzman's rental expenses were not "reasonable and necessary." Sufficient evidence exists that Guzman had no equity in the vehicle at the time it was repossessed. Finally, there is sufficient evidence in the record to support the jury's determination that Guzman did not suffer any compensable mental anguish damages. As a result, the jury's verdict was not clearly wrong and unjust. *See id.*

## DIRECTED VERDICT / BREACH OF CONTRACT

In her third issue, Guzman argues that the trial court erred in granting a directed verdict in Ugly Duckling's favor on her breach of contract claim. She contends that the record contains sufficient evidence creating an issue of fact as to whether Ugly Duckling breached the contract by repossessing the vehicle. Guzman asserts that she was in complete compliance with the contract on the date of repossession, and that Ugly Duckling had waived its right to pursue any remedy for breach by continually accepting her late payments. Ugly Duckling argues that the trial court correctly granted the directed verdict because there is no evidence that Guzman performed under the contract or that it breached the contract.

■ "In reviewing a case in which a verdict has been directed, appellate courts must view the evidence in the light most favorable to the party against whom the verdict was rendered and disregard all contrary evidence and inferences." *Qantel Bus. Sys., Inc. v. Custom Controls,* 761 S.W.2d 302, 303 (Tex.1988). "If the appel-

late court finds that there is any evidence of probative value which raises a material fact issue, then the judgment must be reversed and the case remanded for the jury's determination of that issue." *Id.* at 304.

A directed verdict is proper when the evidence offered on a cause of action is insufficient to raise an issue of fact. *Rudolph v. ABC Pest Control, Inc.,* 763 S.W.2d 930, 932 (Tex.App.—San Antonio 1989, writ denied). The elements in a suit for breach of contract are: (1) a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of the breach. *Aquila Southwest Pipeline, Inc. v. Harmony Exploration, Inc.,* 48 S.W.3d 225, 235 (Tex.App.—San Antonio 2001, no pet.). A non-waiver clause in a contract may itself be waived just as any other contractual provision. *Enserch Corp. v. Rebich,* 925 S.W.2d 75, 82 (Tex.App.—Tyler 1996, writ dism'd by agr.). "Waiver is defined as 'an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right.' " *Enterprise–Laredo Assocs. v. Hachar's, Inc.,* 839 S.W.2d 822, 835 (Tex.App.—San Antonio 1992, writ denied) (quoting *Sun Exploration & Prod. Co. v. Benton,* 728 S.W.2d 35, 37 (Tex.1987)). "Ordinarily, the existence of a waiver is a question of fact, based upon what is said and done." *Id.* The key element in establishing waiver is the intent of the alleged waiving party. *Rebich,* 925 S.W.2d at 82. "In determining if a waiver has in fact occurred, the court must examine the acts, words or conduct of the parties, and it must be 'unequivocally manifested' that it is the intent of the party to no longer assert the right." *Hachar's, Inc.,* 839 S.W.2d at 836.

The record indicates that Guzman did not fully perform under the contract.

Guzman made numerous payments which were either late or less than the required amount. At the time of repossession, Guzman's account was still past due. Furthermore, the contract included a non-waiver clause in favor of Ugly Duckling. Although Ugly Duckling previously had accepted Guzman's late payments without pursuing any remedy under the contract, the record shows that it did not intend to waive the non-waiver clause or its right to repossess the vehicle. *See Rebich,* 925 S.W.2d at 82. Before eventually repossessing the vehicle in August of 1998, Ugly Duckling corresponded with Guzman on numerous occasions, warning her of the delinquent status of her account and the possibility that it would repossess the vehicle if she continued to commit acts of default. After examining Ugly Duckling's words, acts and conduct, it did not "unequivocally manifest" its intent to no longer assert its right to repossession. *See Hachar's, Inc.,* 839 S.W.2d at 836. Therefore, Guzman did not fully perform under the contract, and could not prove an essential element of a breach of contract. *See Harmony Exploration, Inc.,* 48 S.W.3d at 235. Viewing the evidence in the light most favorable to Guzman and disregarding all contrary evidence and inferences, she did not present sufficient evidence to raise an issue of fact on this point, and the trial court did not err in granting the directed verdict. *See Custom Controls,* 761 S.W.2d at 303.

### DIRECTED VERDICT / DTPA

In its first issue on cross appeal, Ugly Duckling argues that the trial court erred in not granting a directed verdict in its favor on Guzman's DTPA claim. Although the jury found that Ugly Duckling committed a DTPA violation, it did not award Guzman any damages. Because we have overruled Guzman's factual sufficiency point of error regarding the DTPA dam-

ages, it is unnecessary to address this issue. Regardless of whether the DTPA issue should have gone to the jury, Ugly Duckling is not liable to Guzman for any damages.

### Legal Sufficiency / Waiver

■ In its second issue on cross appeal, Ugly Duckling argues that the evidence is legally insufficient to support the jury's finding that it waived any breach of contract by Guzman. The jury answered three questions regarding Ugly Duckling's breach of contract claim in the following order: (1) whether Guzman breached the contract; (2) the amount of Ugly Duckling's damages resulting from such breach; and (3) whether Ugly Duckling waived the breach. Before answering the question on waiver, the jury found that Ugly Duckling did not suffer any damages as a result of Guzman's breach. Even if we were to hold that the evidence was legally insufficient to support the jury's finding on waiver, Ugly Duckling still would not recover any damages. As a result, this issue is moot.

### Conclusion

The judgment of the trial court is affirmed.