Petition for Writ of Mandamus
Conditionally Granted and Memorandum Opinion filed October 8, 2009.

In
The

Fourteenth
Court of Appeals



 NO. 14-09-00580-CV



 

In Re Weeks Marine, Inc,
Relator



 



ORIGINAL
PROCEEDING



WRIT OF MANDAMUS



MEMORANDUM OPINION


On July 1, 2009, relator Weeks Marine, Inc., filed a
petition for writ of mandamus in this Court.  See Tex. Gov’t Code Ann.
§22.221 (Vernon 2004); see also Tex. R. App. P. 52.  In the petition, Weeks
Marine requests that we compel the respondent, the Honorable Steven Kirkland,
presiding judge of the 215th District Court of Harris, to vacate his March 30,
2009 order denying its motion to abate and stay the proceedings and compel
arbitration.  We conditionally grant the petition.  

Background

On April 29, 2006, Jose Jimenez was injured while
working on a dredging vessel for his employer, Weeks Marine.  On May 8, 2006, several
days after Jimenez had surgery for his injuries, Weeks Marine sent him a Claims
Arbitration Agreement (the “Agreement”) in which he agreed to arbitrate any
claims arising from his injury in exchange for Weeks Marine’s agreement to pay
him advanced wages, which would be applied toward any recovery Jimenez might
have against Weeks Marine.[1]
 Jimenez signed the Agreement the next day.  On June 29, 2006, Jimenez filed
the underlying lawsuit against Weeks Marine alleging that his injuries were
caused by Weeks Marine’s negligence and the unseaworthiness of the vessel. 
Weeks Marine formally requested that Jimenez submit his claims to arbitration
pursuant to the Agreement.  When Jimenez refused to do so, Weeks Marine moved
to compel arbitration.  The trial court denied Weeks Marine’s motion to compel
arbitration.  

Weeks Marine then sought mandamus relief in this
court.  See In re Weeks Marine, Inc., 242 S.W.3d 849 (Tex. App.—Houston
[14th Dist.] 2007, orig. proceeding [mand. denied]).  We rejected Jimenez’s
arguments that (1) the Agreement is not subject to the Federal Arbitration Act
(“FAA”)[2]
because post-injury agreements between a seaman and his employer are invalid
under Section 5 of the Federal Employers’ Liability Act; (2) the Agreement does
not meet the standards applied in Garret v. Moore-McCormack Co., 317
U.S. 239 (1942), to agreements that diminish a seaman’s substantive right; (3) and
the Agreement is substantively unconscionable.  Id. at 857–60.  

            With respect to
Jimenez’s defense of procedural unconscionability, we concluded that the trial
court was required to hold an evidentiary hearing because the parties had
submitted conflicting affidavits.  Id. at 862–63 (citing Jack B.
Anglin Co. v. Tipps, 842 S.W.2d 266, 269 (Tex. 1992) (orig. proceeding)).  We
granted the petition in part, but did not direct the trial court to enter an
order compelling arbitration while disputed fact issues remained regarding
procedural unconscionability.  Id. at 863.  Weeks Marine filed a petition
for writ of mandamus in the Texas Supreme Court, which was denied on October
10, 2008.

            On January 27,
2009, Weeks Marine filed its first amended motion to compel arbitration and
motion for an evidentiary hearing.  On March 13, 2009, the trial court conducted
an evidentiary hearing and, on March 30, 2009, denied Weeks Marine’s first
amended motion to compel arbitration.  Jimenez and Weeks Marine each filed
proposed findings of fact and conclusions of law.  On May 20, 2009, the trial
court signed its findings of fact and conclusions of law, concluding that the
Agreement is invalid because it is procedurally unconscionable and Weeks Marine
procured it by use of duress.  On May 27, 2009, Weeks Marine filed an amended
request for additional findings of fact and conclusions of law, which the trial
court denied.  

Standard of Review

In
the prior mandamus proceeding, this court determined that the arbitration agreement
is subject to the FAA.  See In re Weeks Marine, 242 S.W.3d at 853. 
Mandamus is the appropriate vehicle to seek relief from a trial court order
denying a motion to compel arbitration under the FAA.  In re Bank One, N.A.,
216 S.W.3d 825, 826 (Tex. 2007) (orig. proceeding) (per curiam).[3] 
To be entitled to the extraordinary relief of a writ of mandamus, the relator
must show that the trial court clearly abused its discretion and it has no
adequate remedy by appeal.  In re Team Rocket, L.P., 256 S.W.3d 257, 259
(Tex. 2008) (orig. proceeding).  

If
the trial court has held an evidentiary hearing and has resolved disputed fact
issues, we may not substitute our judgment on the facts for that of the trial
court.  In re Rangel, 45 S.W.3d 783, 786 (Tex. App.—Waco 2001, orig.
proceeding); see also In re Dillard Dep’t Stores, Inc., 198 S.W.3d 778,
780 (Tex. 2006) (orig. proceeding) (per curiam) (“In reviewing findings of fact
in a mandamus proceeding, we cannot substitute our judgment for that of the
trial court.”).  Instead, the relator must establish that the trial court could
reasonably have reached only one decision, and that its finding to the contrary
is arbitrary and unreasonable.  In re Dillard Dep’t Stores, Inc., 198
S.W.3d at 780; GTE Commc=ns
Sys. Corp. v. Tanner, 856 S.W.2d 725, 729 (Tex. 1993) (orig.
proceeding).  

In
contrast, a trial court has no discretion in determining what the law is or
applying the law to the facts.  In re D. Wilson Constr. Co., 196 S.W.3d
774, 781 (Tex. 2006) (orig. proceeding).  Therefore, a failure by the trial
court to analyze or apply the law correctly constitutes an abuse of
discretion.  In re BP Prods. of N. Am., Inc., 244 S.W.3d 840, 845 (Tex.
2008); Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). 


The party seeking to compel arbitration under the FAA
must establish that (1) a valid arbitration agreement exists, and (2) the
claims at issue fall within the scope of the agreement.  In re Dillard Dep=t Stores, Inc., 186
S.W.3d 514, 515 (Tex. 2006) (orig. proceeding) (per curiam).  Jimenez does not
dispute that he signed the Agreement or that his claims are subject to the
Agreement, but, instead, challenges its validity.  An agreement to arbitrate is
valid under the FAA if its meets the requirements of the general contract law
of the appropriate state.  In re Poly-Am., L.P., 262 S.W.3d 337, 347
(Tex. 2008) (orig. proceeding).  In determining the validity of an agreement to
arbitrate under the FAA, courts must first apply state law governing contract
formation.  Id.  As with any other contract, agreements to arbitrate are
valid unless grounds exist at law or in equity for revocation of the
agreement.  Id. at 348.  Whether a valid arbitration agreement exists is
a legal question subject to de novo review.  In re D. Wilson Constr. Co.,
196 S.W.3d at 781.  Because the law favors arbitration, the burden of proving a
defense to arbitration is on the party opposing arbitration.  In re
FirstMerit Bank, N.A., 52 S.W.3d 749, 756 (Tex. 2001 (orig. proceeding).

Ratification

            Weeks
Marine asserts Jimenez ratified the Agreement and, therefore, any defenses to
the creation of the Agreement are irrelevant.[4] 
In light of the trial court’s finding that the Agreement is procedurally unconscionable,
Jimenez argues that Weeks Marine must establish he later developed an intent to
contract.  

Ratification
is the adoption or confirmation by a person, with knowledge of all material
facts, of a prior act which did not legally bind that person and which that
person had the right to repudiate.  Facciolla v. Linbeck Constr. Corp.,
968 S.W.2d 435, 440 (Tex. App.—Texarkana 1998, no pet.); Enserch Corp. v.
Rebich, 925 S.W.2d 75, 84 (Tex. App.—Tyler 1996, writ dism’d). 
Ratification may be express or implied from a course of conduct.  Isaacs v.
Bishop, 249 S.W.3d 100, 110 n.9 (Tex. App.—Texarkana 2008, pet. denied); Zieben
v. Platt, 786 S.W.2d 797, 802 (Tex. App.—Houston [14th Dist.] 1990, no
writ).  Any act inconsistent with an intent to avoid a contract has the effect
of ratifying the contract.  Isaacs, 249 S.W.3d at 110 n.9. 

Once
a party ratifies a contract, it may not later withdraw its ratification and
seek to avoid the contract.  Mo. Pac. R.R. Co. v. Lely Dev. Corp., 86
S.W.3d 787, 792 (Tex. App.—Austin 2002, pet. dism’d).  The relevant inquiry focuses
on the actions - taken by the party seeking to avoid the contract once that
party became fully aware of the subject prior act which did not legally bind
the party.  Harris v. Archer, 134 S.W.3d 411, 427 (Tex. App.—Amarillo
2004, pet. denied).  A party cannot avoid an agreement by claiming there was no
intent to ratify after that party has accepted the benefits of the agreement.  See
Oram v. Gen. Am. Oil Co. of Tex., 513 S.W.2d 533, 534 (Tex. 1974) (per
curiam) (AWhatever her mental reservations
have been, her acceptance of the payments are inconsistent with the intention
to avoid the lease. . . . The effect is to waive or abandon any right of
rescission or of attack upon the initial invalidity, if any, of the lease.@). 
Whether a party has ratified a contract may be determined as a matter of law if
the evidence is not controverted or is incontrovertible.  Mo. Pac. R.R. Co.,
86 S.W.3d at 792.  

Although
some cases have stated ratification must be “intentional,” that intent may be
inferred from the acceptance of benefits under the agreement after having full
knowledge of the act that would make the agreement voidable.  Williams v.
City of Midland, 932 S.W.2d 679, 685 (Tex. App.—El Paso 1996, no pet.)
(stating that intentional ratification may be shown by party’s acceptance of
benefits under agreement, after becoming fully aware of fraud); Motel
Enters., Inc. v. Nobani, 784 S.W.2d 545, 547 (Tex. App.—Houston [1st Dist.]
1990, no writ) (op. on reh’g) (stating that intent to give validity to former
transaction may be inferred from existing facts and circumstances such as
retaining benefits of invalid contract with full knowledge of facts that make
contract invalid).  The “intention” of giving validity to an earlier act is susceptible
to misinterpretation and misapplication—as is shown by Jimenez’s position.  Old
Republic Ins. Co. v. Fuller, 919 S.W.2d 726, 728 n.1 (Tex. App.—Texarkana
1996, writ denied).  “A party’s intent is indeed important in determining the
question of ratification, but not because the party must possess intent to
ratify.  Rather, the party must perform a voluntary, intentional act which is
inconsistent with an intention of avoiding the prior agreement.”  Id. 
Therefore, Weeks Marine is required to demonstrate only that Jimenez performed
an intentional act that was inconsistent with any intention to avoid the Agreement.


Weeks
Marine contends that Jimenez ratified the Agreement by accepting the benefits
of the Agreement, i.e., the payment of the advanced wages.  The trial court
found that relator had received approximately $20,000 from Weeks Marine under
the Agreement.  Jimenez signed the Agreement on May 9, 2006, and started
receiving the wage payments soon thereafter.  While still receiving payments,
Jimenez hired an attorney and, on June 29, 2006, filed the underlying lawsuit
against Weeks Marine.  On September 21, 2006, Weeks Marine requested that
Jimenez submit his claims to arbitration pursuant to the Agreement, but, on
September 25, he refused to do so.  On October 3, 2006, Weeks Marine filed its
motion to compel arbitration.  It is not disputed that Jimenez continued to
receive and accept advanced wage payments until they were exhausted on October
28, 2006, under the terms of the Agreement, or that he did not return any of
those payments, even after he had hired an attorney and after Weeks Marine had
formally requested arbitration.  

Even
if the Agreement were unenforceable due to procedural unconscionability or
duress, Jimenez ratified it by accepting and retaining the benefits of the
Agreement.  See In re Border Steel, Inc., 229 S.W.3d 825, 835 (Tex.
App.—El Paso 2007, orig. proceeding [mand. denied]) (“[A]ssuming for a moment
that the Agreement [to arbitrate] were unenforceable, Juarez ratified it by
accepting and retaining benefits under the Plan following his injury.”); In
re Leadership Ford, Inc., No. 05-99-00618-CV, 1999 WL 424303, at *4 (Tex.
App.—Dallas June 25, 1999, orig. proceeding) (not designated for publication)
(holding employee ratified his agreement to be bound by plan and its
arbitration requirements when he accepted plan’s benefits after his injury and
did not return such benefits after he knew his employer intended to enforce
plan’s arbitration requirements).[5]
 Having accepted the advanced wage payments after becoming aware that the
Agreement is allegedly invalid due to procedural unconscionability or duress,
Jimenez cannot now avoid the Agreement on those grounds.  See Harris,
134 S.W.3d at 427 (stating that party, who has been fraudulently induced to
enter into voidable agreement engages in conduct that recognizes agreement as
binding after it has become aware of fraud, ratifies agreement and waives any
right to assert fraud as basis to avoid agreement). 

            Jimenez
further contends that Weeks Marine must also show that the circumstances
surrounding the later contract formation were not unconscionable.  Jimenez’s
attorney filed the underlying lawsuit against Weeks Marine on Jimenez’s behalf
less than two months after Jimenez signed the Agreement.  Because Jimenez
continued to accept wage payments after he was represented by an attorney, it
cannot be said that the circumstances surrounding the subsequent ratification
of the Agreement were unconscionable.  We sustain this issue.  

Breach of Contract

Jimenez
argues that he may avoid his obligation to arbitrate his claims pursuant to the
Agreement because Weeks Marine materially breached the payment obligations set
forth in the Agreement.  See Mustang Pipeline Co. v. Driver Pipeline Co.,
134 S.W.3d 195, 198 (Tex. 2004) (“a party is released from further obligation
under the contract only if the other party material breached”).  In support of this
contention, Jimenez relies on the trial court’s findings that Weeks Marine
ceased Jimenez’s maintenance and cure payments when no physician had certified
that Jimenez was at maximum cure, and Weeks Marine canceled Jimenez’s insurance
benefits.  

“Maintenance
and cure” is a seaman’s right under general maritime law to receive a per diem
living allowance for food and lodging (maintenance) and payment for medical,
therapeutic, and hospital expenses (cure).  Bertram v. Freeport McMoran,
Inc., 35 F.3d 1008, 1011–12 (5th Cir. 1994); Davis v. Odeco, Inc.,
18 F.3d 1237, 1245–46 (5th Cir. 1994).  Generally, an employer must pay
maintenance and cure to any seaman who becomes ill or suffers injury while in
the service of the vessel, regardless of whether either party was negligent.  Johnson
v. Cenac Towing, Inc., 544 F.3d 296, 301 (5th Cir. 2008).  This right
terminates when maximum cure has been obtained.  Bertram, 35 F.3d at
1012.  

Therefore,
Weeks Marine’s obligation to pay maintenance and cure is not a term of the
Agreement, but arises out of maritime law.  This is further confirmed by the
Agreement’s acknowledgment that, “[u]nder maritime law, [Weeks Marine has] a
duty to pay maintenance and cure . . .”  Jimenez agreed to arbitrate his claims
in exchange for only the advance wage payments:  “In exchange for this
agreement to arbitrate claims, [Weeks Marine] agree[s] to advance fifty percent
(50%) of the gross wages (regular or overtime) [Jimenez] would have otherwise
earned based on [his] earnings history . . .”  Thus, Weeks Marine’s action in ceasing
maintenance and cure payments before Jimenez was determined to be at maximum
cure is not a material breach of the Agreement.  This issue is without merit
and is overruled.  

Conclusion

We hold that the trial court abused its discretion in
denying Weeks Marine’s motion to compel arbitration.[6] 
Accordingly, we conditionally grant the petition for writ of mandamus and
direct the trial court to vacate its March 30, 2009 order and compel
arbitration of Jimenez’s claims.  The writ will issue only if the trial court
fails to act in accordance with this opinion.  

 

 

We lift the stay issued on July 2, 2009.  

 

                                                                                    

                                                                        /s/        John
S. Anderson

                                                                                    Justice

 

 

 

Panel consists of Justices Anderson,
Guzman, and Boyce.

 

 









[1] 
Weeks Marine agreed to pay Jimenez “fifty percent (50%) of the gross wages
(regular and overtime) [he] would have otherwise earned based upon [his]
earnings history immediately prior to [his] accident of April 29, 2006,
commencing with the first day [he] was medically determined unable to work as
an advance against settlement until [he has] been declared fit for duty, and/or
at maximum medical improvement, and/or October 28, 2006, whichever occurs
first.”





[2] 
9 U.S.C.A. §§ 1–16 (West 2009).





[3] 
As of September 1, 2009, a party may pursue an interlocutory appeal of an order
denying a motion to compel arbitration under the FAA.  See Tex. Civ.
Prac. & Rem. Code § 51.016 (Westlaw current through 2009 1st C.S.).  Weeks
Marine filed this original proceeding prior to September 1, 2009.  





[4] 
Weeks Marine sought findings of fact and conclusions of law on ratification,
but the trial court did not make such findings and conclusions.





[5]
 Cf. In re Beyond the Arches, Inc., No. 09-04-126-CV, 2004 WL 1699900,
at *4–5 (Tex. App.—Beaumont July 29, 2004, orig. proceeding) (mem. op.)
(rejecting employer’s argument that plaintiff had ratified arbitration
agreement by acceptance of payment of medical bills where plaintiff testified
that she had not signed any document relating to or referencing arbitration
agreement; no one had mentioned or given her plan booklet until after she had
sued her employer for negligence for her injury; and she had received no
medical bills, which were sent directly to her employer).





[6] 
Because of our disposition based on Jimenez’s ratification of the Agreement, we
need not address Weeks Marine’s arguments that the trial court addressed the
Agreement under Texas Arbitration Act rather than under the FAA; the trial
court applied the standard for substantive unconscionability rather than the
standard for procedural unconscionability; the Agreement is not procedurally
unconscionable; and the Agreement was not procured by duress.